Judge Mills
delivered the opinion of the court.
The appellants, who were complainants in the court below, set up an entry of 2040 acres, in the name of their ancestor, the calls of which are, “Beginning 40 poles below the mouth of Debon's run, which empties into Muddy “creek, on the west side; beginning as beforesaid, and running nearly W, 326 poles, thence at right-angles up the “said creek, so as to include the quantity and to bind with “the knobs.” This entry bears date the 31st of May 1781, and is elder than those set up in the answers of the appellees against it, except that of Gate’s settlement and preemption, so that if it is valid, their merits need not be enquired into, as they must yield, on account of their inferiority in date.—This has led the court into a laborious enquiry into the merits of the complainants’ entry, and the facts adduced in proof and disproof of its calls:—We say laborious, for we have seldom met with a record swelled to such an enormous size, by a multiplicity of depositions, and depositions of the same witnesses many times taken; and crowded with a mass of matter irrelevant, useless and frequently improper.
Could it be said that either party was clear of this impropriety, it might induce the court not only to impose censure, but also the penalty of costs upon his adversary, whatever might be his fortune, as to success on the main question; but as both are blameable, the court will leave both to *410 share the usual fate, which attends similar controversies between others; hoping that few will be found having money or time sufficient, and still fewer possessing dispositions sufficiently litigious, to produce many such records.
The court will now proceed to inquire into the merits of complainants’ entry. Muddy creek is a branch of the Kentucky river, discharging itself into the south side, the second creek above Boonesborough—its general course from south to north, and is from fifteen to twenty miles in length on a direct line or in the usual modes of travelling from head to mouth, and by its meanders, as reported or proved, by the surveyor, thirty three miles. Into it fall many tributary streams or branches, both from east and west, of different sizes, and on the west side near the number of eighteen or twenty are shewn. Muddy creek is shewn by the evidence of the two parties, to have been notoriously known, by this name, at and before the date of the appellants’ entry. From its head eastwardly, and bordering on the heads of Drowning creek and Station-Camp creek, the next parallel streams, is a range of hills usually called, and notoriously known at the date of the appellants’ entry, by the appellation of “the Knobs” In the vicinity of the entry or survey, as made and claimed, there are bald hills, by some called knobs, but they are capable of being reduced to cultivation by the husbandman, with very little inconvenience to his farm, and are too inconsiderable, and not ranged or placed in a manner suited to constitute the boundary of a survey or entry. Of course, the call “to bind with the knobs,” must be understood as applicable to the main range before spoken of, and not to the little bald mounds, scattered here and there, without order, and perhaps within the entry, as claimed by the appellants. Locate this entry as claimed by the appellants, and it cannot reach the range of knobs by many miles, when it is extended from its base. Place it at some branch of Muddy creek some miles higher up, and it might comply with the call, “to bind with the knobs.” This shews that this call in the entry is deceptive and calculated to mislead the enquirer, unless the call for the mouth of Debon’s run, shall be made so completely and fully notorious, as to correct its effect. Besides Debon’s run being one amongst many, and not exceeding one mile and a half in length, the necessity of its notoriety is proportionably increased, and it will not be sufficient to shew that it had notoriously acquired that name *411 by reputation, and that it was known as such to many, unless they also knew how to discriminate it from the other numerous tributary branches of Muddy creek on its western margin, many of which, notwithstanding the immense volume of proof in the cause appear to be nameless to this day. The notoriety of Debon’s run, as claimed by the appellants, must be next particularly attended to. It appears that about the year 1779, a party of Hollanders, usually styled Low-Dutch, explored the waters of Muddy creek, marked and improved them. That one of them, by the name of Duree, had one or more sons-in-law, by the name of Debon, who did not compose part of the party. That Duree chose out a place for a mill-site, on Muddy creek, which was afterwards known to many by the name of Duree’s mill-site. That they all returned to their residence in the settled part of the United States. In the latter part of the year 1779 Duree returned to this country with a large party of Hollanders and built the station called the Whiteoak Spring, about a half or three quarters of a mile from Boonesborough, that in that party there were several by the name of Duree, and several of the name of Banta; but none by the name of Debon. That in February 1781, the party went out on Muddy creek and built many cabins, with the design of settling a station, which cabins were usually called Banta’s cabins, and were situated about a mile above the run claimed as Debon’s run, on the west side of Muddy creek, and these cabins appear from the proof to have thereafter become notorious. The Indians however, having become troublesome to the new-attempted settlement, and having killed some of them they all removed about the last of April, 1781, to Floyd’s station on Bear-Grass, in the now county of Jefferson, and shortly afterwards removed to, and settled at, the Dutch station near Danville or Harrodsburgh. To give all the testimony of the complainants its full force, with respect to Debon’s run, it seems that Duree the elder marked on the branch now claimed, the initial letters of his son-in-law’s name, Joseph Debon, on a tree on the branch, some distance from its mouth, in 1779, and designed it as the claim of his son-in-law That he communicated this fact to his company who built Banta’s cabins, in 1781, that several of the company saw the marks, and that some of them discriminated the run from others by the name of Debon. Some to whom this matter was communicated in the company, and who *412 understood the run to be called after Debon, swore that it was notoriously known, as they believe, not only to the company, but also to the surrounding stations; but it does not appear to be true that the whole company of improvers at Banta’s cabins knew the same by that name before the date of the entry For John and Albert Voris, and Bogart who composed a part of the party did not know the run by the name pf Debon, and are now strong negative witnesses. Had the name of the run been known to the whole party of improvers and the knowledge of it had not been diffused among other companies or stations, it would in that case be a degree of special and not general notoriety, and could not be deemed sufficient to support the entry, unless the object called for, was of such remarkable character as from its nature, to excite attention, and to afford a presumption that it could not have escaped the notice of others. This however is far from being the case with respect to Debon’s run. Its diminutive size, situated among others of the same character, could only have been discriminated from them, by the arbitrary distinction of general reputation.
This leads to the enquiry whether the name of this run was communicated to, and understood by the inhabitants of the surrounding stations, several of which stood in the vicinity, and within the limits of the present county of Madison; such as Boonesborough, Hay’s station, Grubb’s station, Boone’s station and Estill’s station, the last of which, stood within four or five miles of the mouth of the run. From these stations the complainants have produced about six witnesses, who conduce to prove the fact. One of these, however, whose credit is unimpeached, swears faintly to the fact, and will not place it as early as the date of the entry, states that the name of the run was communicated to him by old Mr. Duree, and wholly denies that he had ever seen the run or been able to discriminate it as such, others give the name of the run, but shew that they are very ignorant of other objects on Muddy creek, and but little acquainted with the stream, although many of those objects, had by the proof in the cause acquired undoubted notoriety. Four of these witnesses are, however, strongly impeached, and three of them at least, very successfully; and as to those whose credibility is not affected, they are confronted with the number of fourteen or fifteen negative witnesses, most of whom were acqainted with every object on the creek, and knew well how to designate them; but *413 knew nothing of Debon’s run, although some of them knew Banta’s cabins, and others Duree’s mill-site.
On questions of notoriety, negative testimony is entitled to peculiar weight.
Hardin and Wickliffe for appellants Pope for appellee.
Negative evidence, as was decided by this court, in the case of Wilson vs. M'Gee, 1 Bibb, 34, and, in many other cases, is entitled to peculiar weight on the enquiry into the existence of notoriety, and for the best of all possible reasons. Notoriety is based on hearsay and every one acting on the same theatre, where this reputation is alledged to exist, who is ignorant of the matter excites a strong belief that this reputation was circumscribed, and not general. Its force then, cannot be evaded in this case; because the numbers in its favor so vastly preponderate, that the notoriety of the object could not have been general. Indeed it is very evident that at Estill’s station, which was nearest the spot, the inhabitants of which were conversant with every object around the place, the name of Debon's run was wholly unknown.
The complainants have not aided their case, by proving the notoriety of many objects in the same vicinity, such as the trace from Boonesborough, to, or past the branch to the Log-Lick—the numerous notorious objects on the trace—the notoriety of Duree’s mill-site, Banta’s cabins, and numerous other objects. It contributes to shew the complainants’ ancestor, might easily have saved his entry by one single additional call, and that by omitting these undoubted objects, or some of them, he failed or refused to comply with the law, and left his location so much in concealment, that its position could not certainly have been found, that others could not with safety have appropriated the adjacent residunm. On this first branch of the case then, the court concurs fully with the court below, in every material point, and decides that the decree of that court must be affirmed with costs.