# GREENWICH INSURANCE CO. *v.* PROVIDENCE AND STONINGTON STEAMSHIP CO.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF NEW YORK.

Submitted November 8, 1886. — Decided December 20, 1886.

A policy of marine insurance was effected April 5th for a term of six months, with this agreement written in the margin: "This policy to continue in force from the date of expiration until notice is given this Company of its discontinuance, the assured to pay for such privilege *pro rata* for the time used." On the 9th October following the assured sent to the insurer a check for $66.67 with a letter stating that it was "one monthly premium from Oct. 5 to Nov. 5" on the insurance "as specified in the policy." No other notice was given to the insurer before the loss which happened November 6th: *Held,* That the payment was not notice to discontinue the policy, nor an election to have it continued in force for the additional month and no longer, but that the policy continued in force by its own terms until the assured should give notice of its discontinuance.

This was an action on a policy of marine insurance. Judgment below for plaintiff. Defendant sued out this writ of error. The case is stated in the opinion of the court.

*Mr. William Allen Butler* for plaintiff in error. *Mr. T. E. Stillman* and *Mr. Thomas H. Hubbard* were with him on the brief.

*Mr. Wheeler H. Peckham* for defendant in error.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This was an action on a policy of insurance, brought by the defendant against the plaintiff in error, to recover for the loss of the steamboat Rhode Island. It appeared on the trial that, on the 5th of April, 1880, the Providence and Stonington Steamship Company effected with the Greenwich Insurance Company a policy of marine insurance, numbered 2661, for $10,000, upon the Rhode Island, for the term of six months from date, with an agreement written in the margin as follows:

"This policy to continue in force from the date of expiration until notice is given this company of its discontinuance, the assured to pay for such privilege *pro rata* for the time used." The policy having been given in evidence, it was thereupon admitted by defendant's counsel that the steamer Rhode Island named in the policy was lost by a peril of the sea by running ashore on Bonnett's Point, in Narragansett Bay, November 6th, 1880, and thereby suffered damage beyond the amount of the insurance, and that the plaintiff thereafter gave due notice and proof of the loss and interest. The amount of the insurance money and interest to the date of trial was thereupon proved to be the sum of $11,338.18.

The defendant's counsel then gave in evidence a letter written on behalf of the plaintiff to and received by the defendant on the day it bore date, which was as follows, to wit:

"Providence & Stonington Steamship Co., Treasurer's Office,
                                    "NEW YORK, Oct. 9, 1880.
" *The Greenwich Ins. Co., New York.*

"GENTS: Herewith please find our check for sixty-six $\frac{67}{100}$ dolls., being one monthly premium, from Oct. 5 to Nov. 5, '80, on insurance on strs. Massachusetts & Rhode Island, as specified in your policies Nos. 2661 & 2662.
            "Yours resp'y,              C. G. BABCOCK, *Treas.*"

Plaintiff's counsel admitted that the letter was accompanied by the check of the plaintiff for $66.66, and that no other or further notice was given by the plaintiff to the defendant before the happening of the loss. The evidence being closed, the defendant's counsel prayed the court to rule and decide:

First. That the privilege written on the margin of the policy was wholly for the benefit of the assured, and gave them the option of continuing the policy in force after the date of expiration named in it without doing any act or thing; that the only notice or act on the part of the assured called for by the privilege was notice of the time of discontinuance whenever the assured should elect to give such notice, and make payment for the time used under the privilege.

Second. That in the absence of any such act or notice on the part of the assured the policy and the risk continued from day to day under the terms of the privilege.

Third. That it was competent for plaintiff to make the time, which was left indefinite and uncertain by the terms of the privilege, definite and certain, and to fix the time to be used under the privilege by proper notice or act for that purpose.

Fourth. That the act of the plaintiff, on October 9th, 1880, after date of expiration of the policy had passed, and the policy was in force under the privilege only, in paying one month's premium, and specifying the period of one month, beginning October 5th, 1880, and ending November 5th, 1880, as the time for which payment was made, was in law an election to continue the risk in force for that month, and that the legal effect of the transaction was to continue the policy in force until November 5th, at noon, and no longer.

And thereupon defendant's counsel prayed the court to direct a verdict for the defendant. This was refused, and the court directed the jury to find a verdict for the plaintiff.

This is the whole case; and the only question is, whether the sending of the check for an additional month's insurance was, in legal effect, a notice of the discontinuance of the policy after that time. The agreement written in the margin of the policy was, that the policy should continue in force from the date of its expiration until notice was given to the insurance company of its discontinuance, the assured to pay for such privilege *pro rata* for the time used. It did not specify when, or how often, such *pro rata* payments should be made. The plaintiff might have waited a year before making a payment, unless the insurance company had demanded an earlier payment. The plaintiff elected to make a monthly payment, and made it. It seems to us very clear that the mere making of such a payment was not, and did not amount to, a notice to discontinue the policy, or an election to have it continued in force for the month for which the payment was made, and no longer. The plan adopted by the plaintiff, to pay from month to month, was a reasonable one and favorable to the insurance company. It would have been a less favorable one

to have deferred any payment longer, and a more favorable one to have paid for a longer time, when it did make a payment. But in whatever manner it chose to arrange its payments, it did not affect the terms of the policy. That continued in force by the terms of it, until the plaintiff gave notice of its discontinuance. To say that a mere payment for a specified time would amount in law to such a notice, would make it dangerous for them to make any payment at all until they met with a loss. Even if in making a payment they should make an express stipulation or proviso, that it was not intended as a notice of discontinuance, such a stipulation would be of no avail, if the defendant is right in the position it takes. This, we think, would be an unreasonable construction of the contract and of the acts of the assured done in pursuance of it.

We cannot say that such a contract is a desirable one for insurers to make. Ordinarily, on an insurance for a specified time or adventure, such as a year for example, or a voyage, they get their premium in advance for the risk of the whole period or adventure; and if a loss happen ever so soon after the insurance is effected, no abatement of the premium is made. This gives them the benefit of average losses in determinate times or adventures, which is the solid basis on which all insurance rests. But the insurance company saw fit to make the contract in the form it did; and having made it, it is bound by its terms. And, according to that contract, we think that it continued to be liable for a loss, although it happened after the time covered by the premiums already paid, the assured being only liable to pay *pro rata* for the time used, and not yet paid for.

*The judgment of the Circuit Court is affirmed.*