**Svea Fire & Life Insurance Company v. Foxwell et al.**

**Transcontinental Insurance Company v. Same.**

(Decided April 29, 1930.)

96

SQUIRE R. OGDEN, GORDON & LAURENT and BLACKWELL & LISMAN for appellants.

RAYBURN & WITHERS for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

These cases were consolidated and tried together below. The proof relates to both cases. Judgment in each case was rendered for the appellees, Foxwell and Wynn. Each policy of insurance was against loss to the amount of $1,500 on the dwelling house and $500 on the contents of the dwelling. The house and contents were totally destroyed by fire on August 1, 1927. Proofs of loss, probably defective, were submitted to the respective companies in September. These proofs were returned by the companies because they were not a satisfactory compliance with the terms of the policy, in that they did not state the value of the personal property, or at least the companies returned the proofs of loss because of the supposed defect mentioned. Later, amended proofs of loss were forwarded to the companies, and they were likewise rejected, and further proofs of loss were submitted, but they were also rejected.

It was claimed in the petitions that the value of the household goods at the time of the loss was above $2,000. There was a loss payable clause in each of the policies in favor of the appellee Wynn. There was a mortgage against the insured dwelling in favor of Wynn for $3,-509. The loss payable clause in his favor affected only the insurance on the dwelling house.

There was a provision in each of the policies that it should be void if without agreement of the company in-

dorsed on it, or added to it, with the knowledge of the insured, foreclosure proceedings should be commenced against the property covered by the insurance contract.

R. L. Price was the insurance agent, who, representing appellants, made the contracts. Foxwell on October 6, 1926, made oral application for insurance on his dwelling and household goods. John Price, the son of R. L. Price, for whom he worked, went to the property of Foxwell and inspected it. That Wynn had a mortgage on the property was fully understood. Hence the loss payable clause. The amount of premium on each policy was $29, which was not paid by Foxwell, but was paid by Wynn soon after the policies were issued upon his learning that the premiums had not been paid by Foxwell. Wynn not only paid the premium, but received the policies from the agent, R. L. Price. When the Wynn note became due, he instituted a suit to collect the note and foreclose the mortgage lien. A decree of sale was entered, and, pursuant, to that decree, the sale was advertised to be held August 1, 1927. The sale was to be at 1 o'clock on that day, but the house and contents were destroyed by fire about daylight on the morning of that day.

The insurance companies did not pay the loss, and these suits were filed against the respective companies, and Wynn, the holder of the mortgage was made a party defendant in each case. An answer was filed to each petition controverting the material allegations and pleading as an affirmative defense the provisions of the policies for a forfeiture because of the commencement of foreclosure proceedings.

By appropriate pleadings appellees sought to avoid that forfeiture provision on the ground that the companies had knowledge of the proceedings and took no steps to cancel the policy, and that they were therefore estopped to rely on that defense, or rather that they waived the forfeiture provision in each of the policies. The answers also seek a reformation of the policies and rely upon oral contracts of insurance between Foxwell and the appellants.

Considering and analyzing the rather voluminous pleadings, we reach the conclusion that there are three major points involved on this appeal. The first is whether Foxwell proved an oral contract of insurance; the second is whether Foxwell and Wynn established, by

the evidence, a right to have the policies reformed; and the third is whether Foxwell established a waiver by the companies of the forfeiture supposed to have been incurred by reason of the foreclosure proceedings instituted by Wynn against the insured property. A determination of these points will probably determine whether the judgment of the court below should be reversed, or affirmed. It is insisted that, if there were oral contracts, they were made by John Price, who was not an agent of both, or either, of the companies, and that he was therefore without authority to enter into a contract of insurance with Foxwell. R. L. Price was the agent, and he had no negotiations with Foxwell for this insurance. John Price inspected the premises and talked with Foxwell, and thereafter reported to his father, who issued the policies. We deem it unnecessary to determine whether John Price had authority to enter into insurance contracts with Foxwell. If the evidence is not sufficient to establish oral contracts of insurance if the dealings had been between R. L. Price and Foxwell, it follows that it is immaterial whether John Price was either with or without authority to enter into such contracts. It appears that it would be sound law to hold that Wynn was the agent of Foxwell when he paid the premium and accepted the policies, and, if this is true, the oral negotiations were merged in the written policies, and appellees could not rely on the oral contracts if the evidence should establish that they were made.

In the case of Kitchen v. Yorkshire Insurance Co., 226 Ky. 376, 10 S. W. (2d) 1074, 1075, this court said:

"It has never been held by this court that an oral contract of insurance may be enforced, unless it contains all of the essential elements necessary to constitute a valid contract. The general rule is that the person claiming under such a contract must prove an oral contract possessing all of the essentials of a written contract of insurance. The subject-matter must be agreed upon, and also the risk insured against, the rate of premium, the duration of the risk, the amount of insurance, and the identity of the parties. The minds of the parties must meet touching these matters."

The quotation embodies a fair statement of the law. The minds of the parties must meet, and it is not going

too far to say that the parties must understand that it is the purpose to make an oral contract of insurance which will be binding. Mere negotiations looking to the issuance of written policies do not constitute an oral contract of insurance, unless it is so understood by the parties, and all of the elements mentioned in the above quotation are present. When the evidence in these cases is measured by the rules above stated, it is readily discernible that at least three of the five elements are missing. Here the subject-matter of the insurance was agreed upon as well as the risk insured against, but there is nothing to show that the rate of premiums was discussed, or that the duration of the risk was agreed upon, or that the identity of the parties was understood. The amount of the insurance was known and agreed to by John Price and Foxwell. The companies that should write the insurance were not discussed, and there was nothing said to indicate that the insurance would be carried in more than one company. It is immaterial, therefore, whether the policies were delivered to Wynn, as the agent of Foxwell, or whether John Price had authority to enter into the contracts. The evidence is not sufficient to establish oral contracts of insurance.

It is insisted that it was understood between R. L. Price and Wynn at the time the policies were issued that Wynn was to be protected against every eventuality. There is no doubt that equity may correct mistakes in an insurance policy the same as in any other written contract. The general rule is that all oral agreements are merged in the policy, unless there is a material variance between the executory agreement and the policy as executed. If an oral agreement is made for one thing and the written contract provides for another, it may be there would be no merger, but this rule would not hold if the written contract was accepted and acquiesced in by both parties after its execution.

Where a reformation is sought, it must be based upon the allegation of mutual mistake, or a mistake on one side and fraud on the other. Denney v. Crabtree, 194 Ky. 185, 238 S. W. 398. There can be no reformation of a written instrument, unless the evidence establishes a right to a reformation beyond reasonable controversy. The evidence of the fraud, or mistake, must be clear and convincing. Johnson et al. v. Elkhorn Gas Coal Mining Co., 193 Ky. 585, 236 S. W. 1041.

The pleadings in these cases hardly raise the question of mutual mistake or fraud. It is contended in the brief for appellees that the provision in the policy providing for a forfeiture, if foreclosure proceedings should be commenced, should be deleted. It is urged that the policy should be reformed so as to substitute for the loss payable clause now in the policy a form of clause protecting Wynn as mortgagee which would not contain a provision for forfeiture, if foreclosure proceedings should be commenced. Foxwell did not see the policies after they were issued, and he makes no claim other than that his insurance was to be written in a good company. There is nothing to indicate that there was any agreement between him and John Price as to the provisions which should be contained in the policy, or policies, when issued. There was nothing to prevent the reading of the policies by Foxwell, although they were in the possession of Wynn, to whom he was indebted in the sum of $3,500. Wynn testified that he did not read the policies, although he had them in his possession.

Under this state of facts both Wynn and Foxwell were bound by the provisions found in the policies. Lee v Hartford Fire Insurance Co., 223 Ky. 533, 4 S. W. (2d) 372; Connecticut Fire Insurance Co. v. Roberts, 226 Ky. 534, 11 S. W. (2d) 148. We fail to find evidence clear and convincing which shows, or tends to show, that the agent made any mistake when he issued the policies, or that he was guilty of any fraud. The evidence does not establish the right to reformation beyond reasonable controversy. It is true that Wynn testified that he was to be absolutely protected by the loss payable clause, but this is not sufficient to show either fraud, or mistake, on the part of the agent. He was absolutely protected in accordance with the provisions of the policy. In the case of Ætna Insurance Co. v. Steele, 222 Ky. 57, 299 S. W. 1091, there was an effort to reform a mortgage clause in the policy. Reformation was denied. The facts in that case supporting a reformation were as strong, or stronger, than the facts in these cases, yet the court denied a reformation.

In the case of Insurance Co. of North America v. Cheathem, 221 Ky. 668, 299 S. W. 545, this court construed and upheld a similar clause in a policy providing for a forfeiture if foreclosure proceedings should be commenced. The force of that opinion is not combated by counsel for appellees

In addition, however, to the attempts to establish oral contracts of insurance which would authorize a recovery and an attempt to reform the policies, the appellees undertook to establish a waiver by the companies of the policy provision providing for a forfeiture, if foreclosure proceedings should be commenced. The waiver is predicated upon proof that R. L. Price stated after the loss that the forfeiture provision with reference to foreclosure proceedings did not apply in Kentucky, that notice was given before the fire to R. L. Price that foreclosure proceedings had been instituted, and that notice was given to John Price before the fire that foreclosure proceedings had been commenced.

If notice was given before the fire to R. L. Price that foreclosure proceedings had been instituted, and at a sufficient length of time before the fire to give him an opportunity to protect his companies by a cancelllation of the policies, under the authority of a number of opinions written by this court the forfeiture provision was waived, and, consequently, the companies are estopped from relying on it. It is most earnestly insisted by counsel for appellants that there is no testimony of probative value establishing that R. L. Price had notice of the foreclosure proceedings before the fire. This requires a consideration of the evidence. The deposition of Foxwell was taken as if under cross-examination, and Foxwell was asked whether he had given notice to R. L. Price, or any other agent of either of the insurance companies, that foreclosure proceedings had been commenced, and be answered that he had not given notice of any kind to anybody. Later he gave his deposition, in which he made no statement about the giving of notice of the foreclosure proceedings to R. L. Price. But at a later date in a deposition given by him he testified that some days before the fire he was in the office of R. L. Price, and that Price told him that Wynn had brought suit.

Foxwell stated, in his first deposition, that he had given no notice, but the evidence given by him when he testified the last time hardly contradicts his evidence in the first deposition. He does not claim, in his last deposition, that he gave any notice to R. L. Price, but that Price told him that Wynn had brought suit. This is a positive statement showing that R. L Price had notice of the foreclosure proceedings several days before the fire. Foxwell does not undertake to state how Price received the notice, but that is immaterial if he actually had notice

that the proceedings had been instituted. R. L. Price was emphatic in his denial that he made any such statement to Foxwell, and he was positive that he had no notice of the foreclosure proceedings until after the fire. It is argued that the testimony of Foxwell should have no weight with the court, and that the question of fact should be decided against Foxwell, but we cannot agree that the evidence is as unimportant as counsel would make it appear. The matter reduces itself to the testimony of one witness to a positive fact, and that fact is that R. L. Price had knowledge of the foreclosure proceedings before the fire, because he said to the witness that Wynn had instituted such proceedings, while on the other hand another witness denies that he made any such statement, or that he had any knowledge of the proceedings before the fire. The trial court rendered a judgment in favor of appellees. The evidence was conflicting. The mind is left in doubt, and, in such cases, this court will not interfere with the judgment of the court below.

The old case of Phoenix Insurance Co. v. Spiers and Thomas, 87 Ky. 285, 8 S. W. 453, 10 Ky. Law Rep. 254, announced principles governing in cases such as these which have been recognized as sound at all times since. It was there stated that a waiver of provision for forfeiture may arise from the act or conduct of the insurer after the insurer has notice, or knowledge, of the breach of the condition upon which the forfeiture is predicated. If the insured does that which brings about a forfeiture, and this is known to the insurer, it becomes the duty of the insurer to act within a reasonable time to enforce the forfeiture, or it will be estopped to insist upon it in the event a loss occurs under the policy. When an insurance company issues a policy covering certain property with provisions in the policy that it is subject to forfeiture if the insured shall breach certain provisions in the policy, it would be unfair to allow the insurance company to leave the insured under the belief that his property is insured until he has a loss, and then insist that the insurance contract had been previously forfeited, when the insurance company had knowledge of the breach of the conditions of the policy by the insured a sufficient length of time in advance of the loss to have canceled the policy and returned the unearned portion of the premium. It is not so much a question of notice given by the insured as it is a question of knowledge on the part of the insurer. When the insurer has knowledge of the breach for a rea-

sonable length of time before the loss, and does not insist on the forfeiture provisions in the policy, it is not allowed to insist on the forfeiture provisions in the policy after the loss. That this principle has become a part of the established law in this jurisdiction is ascertainable by a reference to the numerous cases wherein the case of Phoenix Insurance Co. v. Spiers and Thomas, supra, has been cited.

Foxwell testified that the authorized agent of the appellants told him that Wynn had instituted foreclosure proceedings against the insured property ten days or more before the loss. It would have been a simple matter for the agent to have canceled the policies immediately upon his learning of this breach of the conditions in the policies. He did not do this, but took the chance of there being no loss, and, when the loss occurred, it was too late for the companies to say that the policies had been forfeited because of the breach of the provision against the commencement of foreclosure proceedings.

It is urged that furnishing of proofs of loss was a condition precedent to the right to maintain these actions, and that there was a failure to furnish proofs of loss as required by the policy. It is true that the failure to furnish proofs of loss is a condition precedent to the right to institute an action on policy contracts such as these. Fidelity Phoenix Fire Insurance Co. v. Vincent, 224 Ky. 769, 7 S. W. (2d) 203. But the facts in these cases were not such as to preclude the institution of these actions. Proofs of loss were made out and submitted to the companies, but they were rejected because they were not regarded as sufficient. Amended proofs of loss were submitted and resubmitted, but, when the last amended proofs were sent in, the companies refused to accept them because the time in which proofs of loss should be submitted under the terms of the policies had expired. The amended proofs, under the circumstances, related back to the date that the original proofs were submitted, and, when the last amended proofs were sent in conformity with the request of the companies, they were without authority to reject the proofs on the ground that they came too late.

Judgment affirmed.