## Preferred Risk Fire Ins. Co. v. Neet et al.

(Decided Dec. 17, 1935.)

F. M. DRAKE and DAVID J. HOWARD for appellant.

FIELD McLEOD, LOUIS M. MORANCY and HUNT & BUSH for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The petition, through a process of evolution, sought recovery on an oral contract of insurance for $2,500 on tobacco destroyed by fire. The answer presented a traverse, a plea that the agent spoke without authority, and that such a contract is illegal upon several grounds. The court on the law and facts rendered judgment for $1,800, being the proportionate insurance upon the burned tobacco with the application of the three-fourths value provisions customary to insurance of this character.

The appellees were the owners of a crop of tobacco, and the evidence in their behalf was that on the day housing was completed Elliston, an agent, came to the farm soliciting the insurance. They informed him they wanted insurance in the amount of $100 an acre on 25 acres of tobacco until it was removed from

the barn. He asked if it would be out of the barn in four months and was told that it would probably not be stripped and taken out in that time and he had "better just keep it insured until I get it out." The plaintiff's evidence is that there was a clear, express understanding that the insurance was for as long a time as the tobacco should remain in the barn. In the early part of January Elliston asked if the tobacco was out, and when told it was not he asked: "When will you get rid of it?" He was told "about next February," and responded, "When you get rid of it, let me know and I will cancel the policy."

Elliston was introduced by the plaintiffs, and his testimony reveals that he was the agent of three fire insurance companies, but only one of them, the appellant, the Preferred Risk Fire Insurance Company, insured tobacco. He denied appellees' version of the conversations and contract and stated the agreement was that he would insure the tobacco for only four months. Accordingly, he wrote a policy for $1,250 for the appellant company (of which he was a recorded agent) and procured a like policy under brokerage arrangement from the agent of the Twin City Fire Insurance Company on the same terms. Elliston had carried appellees' insurance protection for some time, although never on tobacco. Following the usual practice, he held the policies for them. In January he visited the farm for the purpose of collecting the premiums, and he testified that on that occasion he laid the policies before Neet and called attention to the fact that they were expiring on January 17. He denied the statements of the other parties to the effect that he was to be notified when the tobacco was removed in order that he might cancel the insurance. Elliston further testified that in the previous October he had sent a statement of account to the appellees and that it disclosed that the insurance was written for four months and would expire January 17th. This testimony as to the statement of account and as to Elliston having shown the policies to Neet on his January visit was not contradicted.

We should say that the two policies, having been written for four months, expired on January 17, and the fire occurred on January 19.

When the law and facts are submitted to the court

for decision without the intervention of a jury, every fact which the evidence conduces to prove and which goes to support the judgment must be assumed to have been found by the court in favor of the successful party, and every fact as to which the evidence is conflicting and which would render the judgment erroneous if found in favor of the adverse party must be assumed to have been found against him. Coleman's Ex'r v. Meade, 76 Ky. (13 Bush) 358. The decision on appeal must, therefore, proceed upon such conclusions. It must be regarded that there was an oral contract of insurance in præsenti covering the tobacco as long as it remained in the barn, or until its destruction by fire therein. This matter of duration of the contract and how such period is to be regarded will be discussed later.

The appellant challenges the validity of the parol contract of insurance as being contrary to the policy of the law of insurance and fundamental principles of the law of agency. It points to the several statutes regulating insurance companies and the manner in which their business must be conducted, particularly those which require the maintenance of a reserve for the protection of the policyholders calculated upon the premium for each risk taken. It argues that since the company has no knowledge of such contract as that claimed to have been made by the appellees, it cannot comply with the law. There is some force in the argument. But with the concession of the universal legal recognition and approval of the uniform practice of making preliminary oral contracts, or temporarily assuming liability pending the issuance of the policy within a reasonable time, it would seem that the argument falls of its own weight. The difference is only in the matter of time. Moreover, section 638 of the Statutes provides that insurance contracts made in violation of the statutes are to be regarded as binding independently of the statute. To permit escape from liability because of one's own dereliction or deviation from the law offends abstract justice and general legal principles. The validity of parol insurance agreements, having essential elements of such a contract, is universally sustained unless specifically prohibited by statute. Massachusetts Bonding & Insurance Co. v. Vance, 74 Okl. 261, 180 P. 693, 15 A. L. R. 981; Cooley's Briefs, pp. 497, 537, 539; Couch's Cyc. of Ins. Law, sec. 78.

The company offered to prove its inflexible rule confining its agents to making written contracts, or issuing policies, except to permit a brief preliminary agreement until a policy could be prepared. It also offered to show by a number of insurance men of wide experience that such was the general rule of insurance companies, and, as well, that it was not a practice pursued by local agents. Indeed, these witnesses as an avowal stated that they had never known of an agent undertaking to make such a contract as this. The court refused to admit this evidence on the trial before the jury (there having been a hung jury on a former trial), and we may assume ignored it when considering the facts himself. The purpose of this evidence was to sustain the position that the rule of apparent agency rests upon a custom of dealing with the public if not directly with the individual immediately concerned; hence, when the fact of custom is negatived, there could not have been, and cannot be, any apparent agency.

It is a rule declared by the Supreme Court of the United States years ago, and accepted everywhere, that the powers of a local insurance agent are prima facie coextensive with the business intrusted to his care, and the company must be held responsible to the parties with whom he transacted business for his acts and declarations within the scope of his employment the same as if they proceeded directly from the principal. See Union Mutual Life Ins. Co. v. Wilkinson, 13 Wall. 222, 20 L. Ed. 617. This rule and the special reasons for so binding insurance companies, as perhaps distinctive from the general law of agency, is fully considered in Henry Clay Fire Ins. Co. v. Grayson County State Bank, 239 Ky. 239, 39 S. W. (2d) 482. It would seem sufficient to say, as is manifest from that opinion, that the vicarious liability of an insurance company for acts of its agent, even though they directly conflict with his instructions and with the practice generally, is too deeply imbedded in the law of Kentucky to be changed or extracted now. To avoid misunderstanding, it may be said that the "rule of common reason" is the component part of this particular rule of respondeat superior, and that there is a distinction between a contract of present insurance and a contract to insure property in the future, such as agreeing to renew policies which will expire at a comparatively distant date. St. Paul Fire & Marine Ins.

Co. v. Trustees of Christian Church of Somerset, 259 Ky. 276, 82 S. W. (2d) 315.

To constitute a contract of insurance, whether verbal or written, there must be an agreement or meeting of minds of both parties upon the essentials. There must be an understanding or agreement upon: (1) The subject-matter; (2) the risk insured against; (3) the rate of premium; (4) duration of the risk; (5) the amount of insurance; and (6) identity of the parties. Section 77, Couch's Cyclopedia of Insurance Law; Pennsylvania Fire Ins. Co. v. Cullin, 202 Ky. 107, 258 S. W. 965; Kitchen v. Yorkshire Ins. Co., 226 Ky. 376, 10 S. W. (2d) 1074; Svea Fire & Life Ins. Co. v. Foxwell, 234 Ky. 95, 27 S. W. (2d) 675. It is said in section 77 of Couch's work that difficulty in establishing the elements necessary where there is an oral contract is frequently obviated, in part at least, by virtue of a rule that it may be regarded as complete and binding upon the presumption that it was made in contemplation of a policy containing the terms and conditions in customary use.

> "Moreover, the authorities with few exceptions hold that if an insurance company orally agrees to insure, but wrongfully fails to issue the policy contemplated by the agreement and denies the contract, it waives the right to rely on the conditions which by implication from the oral agreement might have been inserted in a policy."

See, also, 1 Cooley's Briefs on Insurance, pp. 535, 536, 556.

There was a definite understanding and agreement as to all the elements above stated excepting the premium, identity of the insurance company as a party, and the duration of the risk other than the indefinite period during which the tobacco should remain in the barn. The rule or implication of details or the terms and conditions such as are commonly contained in insurance policies takes care of those other things not so expressly agreed upon.

As to the premium: Since fire insurance rates in any particular community and on specific property are known to be uniform and standard, the law implies a promise to pay whatever premium is so chargeable.

Pennsylvania Fire Ins. Co. v. Cullin, supra; Standard Fire Ins. Co. v. Robey, 257 Ky. 204, 77 S. W. (2d) 785; 26 C. J. 49.

The particular circumstances and facts left open and beyond any rule of entire implication the element of identity of parties. No company was mentioned in the making of the contract, and some difficulty arises from the fact that Elliston was agent or representative of three companies. In accordance with the obvious and uniform conception of courts, generally, we have held that if the application for insurance is made to an agent representing several companies, the particular company to carry the risk must be designated prior to the loss. Otherwise there can be no binding contract upon any of the agent's principals. Section 77, Couch; Shawnee Fire Ins. Co. v. Roll, 145 Ky. 113, 140 S. W. 49; California Ins. Co. v. Settle, 162 Ky. 82, 172 S. W. 119; Hopkins v. Phœnix Fire Ins. Co., 200 Ky. 365, 254 S. W. 1041; Kitchen v. Yorkshire Ins. Co., supra. That rule, however, is not applicable. Elliston represented only one company which insured tobacco, namely, the appellant. He could, therefore, have been speaking only for it. Moreover, he promptly designated that company as the insurer for one-half of the risk and made no attempt to bind the other companies of which he was agent for any part of the liability. So far as the other parties, the appellees, were concerned, the contract must be held to have been made with the single company which the agent had authority to bind. Shawnee Fire Ins. Co. v. Roll, supra.

As to the element of duration of risk: As stated, we accept as the fact that the contract unconditionally covered the tobacco until it should be removed from the barn, and not until four months after date. It is the lack of a definite date of expiration that gives rise to the issue. The appellant contends that such indefiniteness is fatal. Few, if any, contracts are complete in themselves, whether they be verbal or written. Always there is much implied, and many things are assumed as being but the ways of men and of business, the rule of reason and of common practice known to the parties entering into every contract. Insuring a crop of tobacco so long as it remained in the barn had a well-known meaning. It was said in Kor v. American Eagle Fire Ins. Co., 104 Neb. 610, 178 N. W. 182,

that though no express agreement was reached as to duration of the risk, a parol contract will not be invalidated in that particular if the parties' intention as to the duration can be gathered from the facts and circumstances. The tobacco had just been housed, and it is common knowledge of growers, dealers, and insurance companies assuming such risks that it is placed in the barn for seasoning and preparation for sale during the ensuing period when the loose-leaf warehouses open the market and continue for several months. The proof is the market opened in December and sales continued until the middle of March. The agent's appreciation of the situation is manifest by his inquiry if it would be gotten out in four months. He realized it would be about that time before the tobacco could be moved. That was his estimate in having the policies issued for that period. Plaintiff's evidence is that he was told it would probably take a little longer to prepare the tobacco for removal, so he well understood that he was contracting to carry the risk for a limited period, perhaps not over six months. It was a determinable period. His estimate was too short. It was the company's obligation to make it longer at the beginning or renew at the end for the entire $2,500. Everybody knows of the general practice of issuing policies to embrace a stated term and canceling it to measure the exact period when it shall become established. It is apparent that was the practice Elliston was following here. Such, we must conclude, was what the agent in this case agreed to do, and that the coverage for the entire period was in the contemplation of the parties. This conclusion relates to the entire $2,500, for Elliston and his principal (the appellant) only were known to and contracted with by appellees. The contract met the requirements as to certainty of the period of duration. Pennsylvania Fire Ins. Co. v. Cullin, supra; Henry Clay Fire Ins. Co. v. Grayson County State Bank, supra; Globe & Rutgers Fire Ins. Co. v. Draper (C. C. A.) 66 F. (2d) 985; Greenwich Ins. Co. v. Providence & Stoningham Steamship Co., 119 U. S. 481, 7 S. Ct. 292, 30 L. Ed. 473.

It is contended that the appellees are bound by the policies written and obtained by the agent and delivered to them, or retained by Elliston as their agent for the purpose.

Under the acceptance of the trial court's decision, it must be accepted as the fact that appellees' attention was not called to the date of expiration. There is no repudiation of the policies in this case, but a plea that they were issued in partial performance of the contract entered into.

If the agreement is to insure or is for temporary or preliminary insurance, it is merged in the policies subsequently issued if they are accepted by the insured, unless there is a material variance between the terms of the executory agreement and the policy as executed. 32 C. J. 1114; Cooley's Briefs on Ins. p. 514; Svea Fire & Life Ins. Co. v. Foxwell, supra. But if there is only an attempt to issue a policy in place of an oral contract, such policy does not become valid as a contract by reason of lack of assent thereto by either party and the oral contract continues in force. It cannot be said that the oral contract is merged in a written policy which does not cover all the elements or agreements of the parol contract and does not control as to material errors therein. Couch, sec. 81; 26 C. J. 52; Franklin Fire Ins. Co. v. Hewitt, 42 Ky. (3 B. Mon.) 231; Springfield Fire & Marine Ins. Co. v. Snowden, 173 Ky. 664, 191 S. W. 439, 441.

In the Hewitt Case the insurer sent a policy at variance from the terms of the oral contract and a loss occurred within the risk contracted. The policy had been received by the insureds' clerk and its terms were not known to them. It was held that recovery could be had according to the original parol contract.

In the Snowden Case, after there was an oral agreement to insure certain property, a policy was delivered to the insured's bank for him which contained a nullifying clause if there was any other insurance on the building. Holding the policy did not supersede the oral contract which had no such condition, the court said:

"It seems, indeed, that the parties contemplated that their contract for the insurance should be put in writing into a policy, as a memorial of the contract, but it could not be logically held that they agreed that any conditions should be embraced in the writing, other than those agreed upon, when the proof is in nowise conflicting as to the agree-

ment, nor can it be presumed that appellee contemplated that the policy, when prepared by appellant, would contain anything other than the terms of the contract agreed upon. If the policy had been delivered to and accepted by him, with knowledge of the stipulation in it, or if he had had the policy under such circumstances as he ought to have known of its contents and failed to repudiate it, then a very different case would be presented. To hold that appellant, who knew what was in the policy, could insert into the written memorial of the contract a stipulation of which appellee did not know and to which he had not agreed and which, under the facts, would render it void as soon as it was issued, and then allowing appellee to rest in fancied security, relying upon his contract as protection against disaster, until after he suffers the loss against which he was guarding, and then to rudely break his dream of security by the interposition of the stipulation, would be similar in its effects to lulling one into a belief in his perfect safety and then assailing him from ambush. Placing the policy in the bank to be held for appellee was, indeed, a technical delivery."

A question of jurisdiction was raised. The summons was served upon the insurance commissioner as a statutory agent (section 631, Statutes), after the company had withdrawn from doing business in Kentucky and had closed its agencies here. It is conceded that if loss had occurred during the term of a written contract the court would have had jurisdiction even though the company had withdrawn before the loss occurred. Home Benefit Society of New York v. Muehl, 109 Ky. 479, 59 S. W. 520, 22 Ky. Law Rep. 1378. But a distinction is drawn by counsel between the two situations because under a policy the company has knowledge of the facts and existing obligations and if it wishes to protect itself from subsequent litigation it can do so by canceling the policy, while under a verbal contract, made in violation of instructions to its agent and of which it knows nothing, the term of the jurisdiction is extended without limit and without ability or opportunity to protect itself from unexpected litigation. It gets back to the failure of the agent to advise his principal what he had done. If the com-

pany has made a valid contract, either oral or written, it remains in the state and subject to the processes of the Kentucky courts until that contract shall have terminated.

There are some other points raised, such as no consideration and that the particular contract is within the statute of frauds, since its indefinite term—until removal of the tobacco—put it beyond the power of the company as a party to be charged to terminate the contract within the year. These questions having been adversely decided in many cases, it would seem sufficient merely to say we cannot sustain them.

Judgment affirmed.

Whole court sitting.