CAMPBELL et al.

v.

AETNA INS. CO. et al.

Court of Appeals of Kentucky.

June 18, 1954.

G. E. Reams, Harlan, Henry L. Bryant, Pineville, for appellants.

T. M. Galphin, Jr., Ogden, Galphin & Abell, Louisville, James Sampson, Harlan, for appellees.

WADDILL, Commissioner.

The appellants, Silas Campbell and the Pittsburgh Consolidation Coal Company, brought this action against the appellees, Aetna Insurance Company and nineteen other insurance companies, to recover $118,000 (less premiums) on an alleged parol contract of insurance on a building destroyed by fire. By agreement the suit was transferred to equity, and following a trial, the Chancellor decided that the parties had not entered into an insurance contract because the evidence failed to establish that there was a meeting of the minds of the parties upon the following essential elements of an oral contract of insurance: (1) The amount of the insurance; (2) the rate of premium; and (3) the identity of the parties.

The events leading to this litigation began on April 7, 1950, when the appellant, Silas Campbell entered into a written contract with his co-appellant, Pittsburgh Consolidation Coal Company, for the construction of a building at the mine of the coal company at Deane, Kentucky. Campbell agreed to construct the building according to certain plans and specifications, and was to receive $116,000 when the building was completed and accepted by the coal company.

Under the contract Campbell was to obtain Workmen's Compensation Insurance, public liability and property damage insurance, but there was no requirement of fire insurance. However, it appears that after the contract was entered into, Campbell and C. E. Hennen, agent for the Pittsburgh Consolidation Coal Company, mutually agreed that fire and extended coverage insurance should be carried on the construction of the building to cover the interests of each of the parties, at the expense of Campbell. Hennen explained that he overlooked placing the fire insurance requirement in the original contract.

Campbell testified that before he began the construction work he talked with A. H. Noel, manager of the insurance agency of Lewis, Noel, and Jones, Harlan, Kentucky, who represented twenty insurance companies (appellees herein) which had authority to issue policies of insurance against loss or damage by fire, and advised Noel of his building contract with the coal company and requested Noel to provide him with fire insurance on the building. Campbell stated that he told Noel that Hennen wanted $120,000 fire insurance coverage on the building and suggested to Noel that Noel should go to Jenkins, Kentucky, and make the necessary arrangements for such insurance as required by the coal company. Noel does not deny these statements.

Some time between April 7, 1950, and April 15, 1950, Noel and Aubrey Campbell, son and agent of Silas Campbell, had a discussion with Hennen about their insurance coverage requirements. As a result of this conference, all the insurance required by the written contract between the coal company and Campbell was ordered and the proper policies were issued therefor, and certificates showing the same were forwarded to the coal company by Noel. However, no fire and extended coverage insurance policies were ever issued.

On about March 1, 1951, the building in question, when approximately 98 per cent complete, was destroyed by fire, causing an alleged loss to the appellants in the sum of $118,000. It appears that after the construction contract was entered into between Campbell and the coal company, various changes were made in the original plans and specifications of the building which caused the cost of the building to exceed the original contract price. The appellants claim as a result of the conference between Aubrey Campbell, Noel, and Hennen, and the conversation between Silas Campbell and Noel, that Noel, as agent for the twenty fire insurance companies named in this action, bound all these insurance companies by oral insurance contracts to cover the fire loss sustained by Campbell and the coal company. The insurance companies denied liability and this suit followed.

In their petition the appellants assert that the Insurance Companies (appellees herein) through their agent, W. H. Noel, bound themselves on oral insurance contracts with appellants for a total fire coverage of $120,000 "Builder's Risk, Completed Value," and that these oral contracts of insurance provided for an equal division of the risk between the twenty insurance companies, each in the sum of $6,000. The petition in effect sought judgment against each of the twenty insurance companies which Noel represented for one-twentieth of the $118,000 loss, less the premium charge for a $6,000 "Builder's Risk, Completed Value" policy. In short, "Builder's Risk, Completed Value" form of policy means that

the whole amount of insurance on the value of the building in its completed state would be issued as soon as the construction of the building was begun. The petition alleged that such was the kind of insurance applied for and approved by Noel.

The essential elements of a contract of insurance, whether verbal or written, concerning which there must be an understanding are: (1) The subject matter; (2) the risk insured against; (3) the rate of premium; (4) duration of the risk; (5) the amount of insurance; and (6) identity of the parties. State Automobile Mut. Ins. Co. v. Bowie, 280 Ky. 696, 134 S.W.2d 601; Preferred Risk Fire Ins. Co. v. Neet, 262 Ky. 257, 90 S.W. 2d 39; Svea Fire & Life Ins. Co. v. Foxwell, 234 Ky. 95, 27 S.W.2d 675. And it is a rule in this jurisdiction that if the application for insurance be made to an agent representing several insurance companies, the particular company or companies to carry the risk must be designated, with the amount each is to carry, and each must, by its agent or otherwise, agree to assume liability upon the terms and conditions proposed and acceded to by the applicant. Until this is done, there can be no binding contract. Hartford Fire Ins. Co. v. Trimble, 117 Ky. 583, 78 S.W. 462; also see, Kerr on Insurance, pp. 46, 57, 60; Pomeroy's Equity Jurisprudence, section 1405; Ray v. Talbott, 64 S.W. 834, 23 Ky. Law Rep. 572; Gray v. Davis, 26 Ky. 381; Fowler v. Lewis, 10 Ky. 443; Banta's Heirs v. Clay, 2 A.K.Marsh 409, 9 Ky. 409. With these fundamental rules before us, we proceed with our review of the case.

The Chancellor, in an excellent written opinion which is before us, fully considered all pertinent issues in the case, and denied the appellants a recovery for the reason that the evidence failed to establish the essential elements required for oral contracts of insurance of the type upon which the appellants base their suit. Therefore, in view of the Chancellor's findings, we shall re-examine only those findings adverse to the appellants to determine whether or not they are supported by the

record. In the event that appellants have failed to prove all the essential elements of the contract relied upon, their action must fail.

The written documents introduced concerning the subject matter of the conversations upon which this action is based consist of: A written memorandum made at the conference held at Jenkins, Kentucky, between Aubrey Campbell, W. H. Noel and C. E. Hennen, which set out the public liability and property damage insurance requirements, and contractual liability insurance requirements "in connection with construction of the Administration Building, at the Hendrix Mine, Deane, Kentucky, per contract dated April 7, 1950"; another memorandum made by Noel which he gave to his secretary for attention, which reads: "2 parties—fire ins.—E. C. Consolidation Coal Co. (Ky.) Hendrix Mine, Deane, Letcher County, Ky."; and a letter written to Hennen by Noel on the 15th day of April, 1950, as follows:

"Mr. C. E. Hennen, Purchasing Agent
"Consolidation Coal Company (Ky.)
"Jenkins, Kentucky

"Dear Sir:

"Re: Silas Campbell File B. 5328
"On behalf of the above assured and in connection with the erection of the Administration Building at the Hendrix Mine, Deane, Kentucky, we have arranged the following insurance:

"Workmen's Compensation Insurance with the Eureka Casualty Company, Philadelphia, Pennsylvania. Manufacturer's and Contractor's Public Liability Insurance $50,000.00/$100,000.00, and Property Damage Insurance $25,-000.00/$50,000.00, limits, and Contractual Liability Insurance $120,000.00, with the Standard Accident Insurance Company of Detroit, Michigan. Certification showing this insurance will be sent you in the next few days.

"Likewise, Fire and Extended Coverage Insurance has been arranged for

and will be put into effect covering this proposed building and insuring the parties at interest, as soon as construction has started.

"Yours very truly,
"Lewis, Noel & Jones, Inc.
"W. H. Noel,
"General Manager."

The evidence shows that Mrs. Rayma Huff, a secretary of Noel's called Aubrey Campbell, on May 6, 1950, pursuant to written instructions of Noel, and was advised by him that there was "no material at all on the job at that time." It further appears that in the latter part of May, 1950, Noel called Campbell and was again advised to the same effect.

With regard to the element of the amount of insurance, which is in question, Silas Campbell, Aubrey Campbell and Hennen testified that the fire insurance coverage agreed upon in the conversations which took place between them and Noel between April 7, 1950 and April 15, 1950, was $120.000. Neither the written memorandum of Hennen, nor the written memorandum of Noel (made at the Jenkins Kentucky conference), nor the letter of April 15, 1950, from Noel to Hennen, contained any reference to the amount of the fire and extended coverage insurance.

Another question arises as to whether the fire and extended coverage insurance was to be in the form of "Builder's Risk Completed Value" (as alleged by the appellants) or the "Reporting Value" form. Silas Campbell did not testify as to the form of the insurance he sought, although he said he asked for $120,000 insurance coverage. Aubrey Campbell did not testify that the insurance was to be written under a "Builder's Risk Completed Value" form. Fairly construed, we believe his evidence negatives the allegation that the insurance was to be the "Completed Value" form. Hennen did testify: "It was a 'Completed Builder's Risk' is what it was, in other words. That's what the contract was." But he was merely stating his own conclusion. He did not testify that he or any

one else had any understanding with Noel as to the form of insurance that would be issued, nor did he testify what Noel said in that regard. Noel testified that he did not recall any discussion as to the form of the insurance, "Completed Value," or "Reporting," or the amount of the insurance to be issued. His testimony clearly indicates that it was his understanding and intention that the first policy, or policies, would be issued when construction reached the state where there were insurable values on the property, then, such first policy, or policies, would be for a small sum or sums, and as the insurable values increased with the progress of the construction, the policy or policies would be increased, and additional policies issued through the completion and acceptance of the building, irrespective of the total cost or total insurable values thereof. In view of substantial evidence to support the Chancellor's finding that there was not a meeting of the minds of the parties on the amount of the insurance, we accept his conclusion in this respect. The appellants' failure to establish this essential element of the alleged contract is decisive of the case. However, since there are other important questions presented, we will give them our consideration.

The appellants insist that there was a meeting of the minds of the parties concerning the rate of premium to be paid for the insurance coverage in question. The rule set forth in Preferred Risk Fire Insurance Co. v. Neet, 262 Ky. 257, 90 S.W.2d 39, cited in support of their contention, is as follows:

"As to the premium: Since fire insurance rates in any particular community and on specific property are known to be uniform and standard, the law implies a promise to pay whatever premium is so chargeable."

We observe that this rule is firmly established in this jurisdiction. Standard Fire Ins. Co. v. Robey, 257 Ky. 204, 77 S. W.2d 785; Pennsylvania Fire Ins. Co. v. Cullin, 202 Ky. 107, 258 S.W. 965. However, this rule is not conclusive of the rate of premium in the instant case because there was a question as to the kind of insurance contemplated by the parties.

We have indicated that the testimony introduced by the appellants was not sufficient to show that a "Builder's Risk, Completed Value" policy was to be issued. The testimony of Noel, and his secretary, indicates that "Reporting Form No. 17" was the type of policy intended to be issued. Noel stated that the type of "Builder's Risk" policy was not discussed, and the selection of the type of insurance was apparently left to his judgment. He said that he had written to the Kentucky Inspection Bureau for the rate on "Reporting Form No. 17," as such was the type of policy which he intended to issue.

The evidence further shows that there are several different types of "Builder's Risk" insurance policies, and each type has a different premium rate. Again we agree with the Chancellor as we are unable to see how there could have been an agreement of the parties on the rate of premium in view of the fact that the appellants intended that a "Builder's Risk, Completed Value" policy be issued that would carry a uniform and standard premium, whereas Noel intended that the "Reporting Form No. 17" type of policy, or policies, would be issued.

Another reason why the appellant cannot recover in this action is because the Chancellor found that there was no evidence showing that there was any agreement on the part of Noel that any certain amount of fire insurance would be placed with any particular company that Noel represented. After a review of the record we have reached the same conclusion. The contract therefore fails for lack of identity of the parties to the contract. Hartford Fire Ins. Co. v. Trimble, 117 Ky. 583, 78 S.W. 462.

For the reasons given herein, the judgment is affirmed.