CARL A. SCHNEIDER, Appellant, v. DUBINSKY REALTY COMPANY, a Corporation, Respondent, RICHARD C. SPACKLER, Trustee, Defendant.—127 S. W. (2d) 691.

Division One, May 2, 1939.*

*NOTE: Opinion filed at September Term, 1938, March 8, 1939; motion for rehearing filed; opinion modified; motion for rehearing overruled April 1, 1939; motion for rehearing on modified opinion overruled at May Term, 1939, May 2, 1939.

*Richard A. Austin* and *Taylor R. Young* for Carl A. Schneider.

*Harvey B. Cox* and *Dubinsky & Duggan* for Dubinsky Realty Company et al.

*Brackman & Versen* and *Amandus Brackman* for Richard C. Spackler.

DOUGLAS, J.—These are cross appeals.

The plaintiff, claiming as a tenant of defendants, brought suit for damages for personal injuries received when the back porch of his second floor apartment collapsed while he was on it, causing him to be dropped to a concrete pavement on the ground about fifteen feet below. His apartment was one of sixty-two apartments in a large three-story building known as the Sherwood Court Apartments, located at McPherson and Taylor Avenues, in St. Louis. In 1931, this property was encumbered with a deed of trust to secure the payment of notes, in which the defendant Richard C. Spackler was named trustee. The property was then conveyed to the defendant Dubinsky Realty Company subject to the deed of trust. The Realty Company entered in possession as owner and thereafter operated and managed the property and was doing so at the time of the accident. The building is divided into separate sections, each section containing two apartments on each of the three floors. Plaintiff occupied an apartment on the north end of the second floor. There was another apartment adjoining plaintiff's on the south end of the same floor. The rear, or kitchen, entrances of these two apartments were on the west side of a court, or areaway. They opened onto a platform or porch which extended along and was fastened to the wall of the building. The same porch served both apartments. It was eighteen feet long and thirty inches wide. It consisted of a concrete floor on a sheet iron base which was supported by an iron framework with angle-braces to the wall. To reach plaintiff's kitchen door from the outside it was necessary to climb a stairway on the east side of the court to the second floor level and to pass over an elevated crosswalk which bridged the court. The crosswalk landed you on the porch about opposite the door of the neighboring apartment. Then, proceeding to plaintiff's door, you turn to the right, or north, and step several paces along the porch. While it was admitted that the crosswalk and the south part of the porch were used in common by plaintiff and his neighbor, it was claimed that the part of the porch north of the crosswalk which fell was for plaintiff's use only.

On Christmas, 1932, plaintiff started to take a bag of laundry to the laundry room provided for his use in the basement of the building, went out of his kitchen door onto the porch, took several steps in the direction of the crosswalk and when close to it the porch gave way beneath him.

Plaintiff obtained a judgment below for $7500 against the defendant Realty Company only, the jury finding in favor of the defendant Trustee. The Realty Company and the plaintiff each filed a motion for a new trial and both were sustained on the same ground for error in giving an instruction on behalf of the Trustee. Plaintiff has appealed from the order granting the Realty Company a new trial, and the Trustee has appealed from the order granting to the plaintiff a new trial against him.

One of plaintiff's allegations was that, under the terms of the deed of trust providing for remedies on default, the Trustee had taken over the possession of the building and by a supplemental agreement had appointed the Realty Company its agent to supervise and manage the building so that the Trustee was liable as principal and the Realty Company liable as agent for negligence for failure to keep the porch in repair. It is undisputed that the Realty Company had continued since its acquisition of the property in the active control and management of the apartments and was in charge of them at the time of the accident. Plaintiff proceeded on two theories in the trial, instructing the jury on both. One was that if the jury found that the Realty Company was managing the building as owner and not as agent of the Trustee, then the Realty Company alone was liable. The other was that if the Realty Company was operating the building as the agent of the Trustee, then both were liable. It was to meet this latter issue that the Trustee offered his instruction which the trial court has found erroneous and grounds for a new trial. The instruction in effect told the jury that if defendant Spackler's only interest in the building was that of trustee for the collection of the rents and that he was not interested in its operation or management, then a verdict in his favor as Trustee should be returned.

■ It is urged that it was error to submit to the jury as this instruction did, in effect, the question of the Realty Company's agency as it was one of law for the court having been established by documentary evidence and undisputed facts. As plaintiff invited this instruction his objection to it should not be considered, but the Realty Company advances the same objection in support of the action of the trial court in granting it a new trial, so we shall determine it. ■ It is the general rule that where the material facts from which agency is to be inferred are undisputed and only one conclusion can be reasonably drawn from them, then the question of agency is one for the court; otherwise—it is a question of fact to be determined by the jury. [3 C. J. S., Agency, sec. 330.] In applying this rule it was held that where a series of writings were expressed in terms so plain as to require no aid from extrinsic evidence, the question whether they established the relation of principal and agent was one for the court. [Clark et al. v. Rogers Foundry & Mfg. Co. (Mo. App.), 199 S. W. 576.] On the other hand, where the contract is obscurely expressed and extrinsic evidence becomes necessary for its proper interpretation or where the facts from which the agency may be deduced are in dispute, then the question is one for the jury. [Black River Lumber Co. v. Warner, 93 Mo. 374, 6 S. W. 210; Berkson v. Kansas City Cable Ry. Co., 144 Mo. 211, 45 S. W. 1119.] The allegation of agency in the instant case was denied not only by the Trustee but by the Realty Company as well. It becomes necessary to observe, therefore, what evidence plaintiff presented

to prove his allegation and whether it was so conclusive as to be beyond dispute. In considering this evidence we shall bear in mind that the burden of establishing agency rests on the party by whom it is alleged and the facts to establish it must be given their reasonable and natural construction.

Plaintiff introduced into evidence the deed of trust under which the trustee was appointed. It stipulated that in the event of any default the Trustee in his discretion might take possession of and manage the premises and collect the rents. However, the Trustee chose not to exercise this power under the deed of trust but made a new and supplemental agreement with the Realty Company, the owner. This agreement was also introduced by the plaintiff. Plaintiff contends that by this agreement the Realty Company was appointed the agent of the Trustee not alone to collect rents, but with the additional duty of managing the building. The Trustee, on the other hand, contends that the agreement was understood and intended by the parties to be merely an assignment of rents and the appointment of the Realty Company to collect them for the Trustee. The agreement recites the making of the deed of trust, the default thereunder, a desire to avoid foreclosure, a consent to assign the rents to the Trustee, a further consent that the Realty Company should continue to manage the building and collect the rents and a recital that the Realty Company should account for and pay all the net revenue collected by it to the Trustee. The agreement then continues: ''Now, therefor, the premises considered, the party of the first part does by these presents assign, transfer and set over to the party of the second part all the rents, revenues, profits, income and usufruct of said real estate and improvements thereon, *and the party of the second part hereby appoints the party of the first part its agent to collect the same and continue the management of said real estate and improvements thereon,* under the terms of this agreement and subject to its limitations herein set forth, and the party of the first part covenants to faithfully collect and account for all the rents, revenues, profits, income and usufruct of said real estate and to render unto the party of the second part not later than the 15th day of each month, his statement showing the amount of rents collected, from whom collected, for what period of time and for what premises and at what rate, accompanied with an itemized statement of all expenses with vouchers therefor attached.

''This agreement shall remain in full force and effect until all of the mortgagor's defaults under the terms of the deed of trust or mortgage aforesaid shall have been cured; *nothing herein, however, shall be construed to impair the right of the party of the second part,* or any of the various and sundry noteholders to foreclose the lien of said deed of trust or [to] *enter into the possession of said premises,* and collect the rents and profits thereof as in said deed of trust pro-

vided, for any default of the party of the first part, in the perforformance of the covenants of the mortgagor, nor shall this agreement in any manner supersede, alter, modify, amend or change any of the terms and conditions in the mortgage or deed of trust hereinbefore referred to.''

The plaintiff argues that the language which we have first italicized above: ''and the party of the second part hereby appoints the party of the first part its agent to collect the same and continue the management of said real estate and improvements thereon'' is conclusive of his contention. At first blush it might appear to be so, but when read in the light of the recitals leading up to it and looking to the whole instrument and considering it with the circumstances which brought about its being made, we are of the opinion that it should not be construed as a taking of possession by the Trustee coupled with an appointment of the Realty Company as its agent. Possession of the premises was not transferred by this instrument. Its very language denies such a contention where it says, as we have also italicized, that it shall not be construed to impair the right of the Trustee to enter into possession of the premises under the deed of trust. The deed of trust was the only source of authority permitting the Trustee to take possession. The agreement is not based on any exercise of the right under such authority but specifically reserves such right. It thereby denies its use. This is not all. The plaintiff made the Trustee his witness and elicited from him the testimony that the agreement was treated by the parties merely as an assignment of rents, nothing more, and was made for the protection of the noteholders and that he, the Trustee, had not participated in any way in the management of the building. Under our view, the Trustee's demurrer to the evidence should have been sustained. However, the trial court must have concluded that the agreement was ambiguous because, at the instance of the plaintiff it submitted the question to the jury. Assuming, for illustration, that the agreement was ambiguous, then such submission to the jury was proper and the jury's finding is conclusive. For another reason, this argument is not available to the Realty Company. One defendant may not complain of an instruction because it is too favorable to its codefendant, or because it prevented a joint judgment against both. Under all the instructions, if the jury found for the plaintiff, it had to find against the Realty Company either as owner of the building or as agent of the Trustee. The Realty Company would be liable in either capacity. The instruction in no way, therefore, affected the question of the Realty Company's liability to the plaintiff. If the plaintiff was prejudiced by the instruction, then only he and not the Realty Company may complain so long as he did not invite or acquiesce in the instruction. [See Barr v. Nafziger Baking Co., 328 Mo. 423, 41 S. W. (2d) 559, and cases cited therein.]

In sustaining the motions for new trial, the trial court relied on the case of Orcutt v. Century Building Co. et al., 201 Mo. 424, 99 S. W. 1062. The facts in that case are indeed similar but with one striking exception. There, suit was brought because of injuries received in an elevator accident against the building company, which was the owner, and against the trust company, which was named trustee in deeds of trust on the building. The latter contained provisions the same as are here involved. Also, by a separate contract the Trust Company had been empowered to collect the rents. (Here, the similarity stops because the Trust Company also had been empowered to perform certain duties in connection with the management of the building.) We found the Trust Company was liable because the entire management and control of the building had been placed in its hands by the contract and *it had entered upon the performance of its duties and was in fact managing the building*. (Our italics.) That identical contract had been before us in the case of Luckel v. Century Bldg. Co., 177 No. 608, 76 S. W. 1035, where we found that the Trust Company was in possession of the building and managing it as the agent of the owner. Other cases cited are not applicable.

 . Again assuming that it was proper to submit the question of agency to the jury, we do not sustain the charge that the instruction was misleading because it failed to negative the allegation that the Realty Company was the agent of the Trustee. Although it was inartificially drawn, yet there could be no misunderstanding of this instruction when read with all the instructions and particularly in connection with plaintiff's main instructions which presented the question of the agency. We repeat what was well expressed in Jenkins v. Missouri State Life Insurance Co., 334 Mo. 941, 69 S. W. (2d) 666. "However, all instructions must be read and construed together, and where, taken together, they do contain a complete exposition of the law and cover every phase of the case, a verdict obtained thereon will be sustained, although some instructions taken separately may be incomplete and open to criticism. . . . If the instructions harmonize and clearly state the law when read together, indefinite, ambiguous or misleading language . . . is cured. . . ." Nor does it conflict, as plaintiff claims, with his instructions. It is in entire accord with the theory of the case as submitted by plaintiff but presents the converse or the Trustee's side. A plaintiff cannot complain of an instruction which presents only the defendant's side of the case and in the same view of the law. [Woehler v. City of St. Louis, 342 Mo. 237, 114 S. W. (2d) 985; Womach v. St. Joseph, 168 Mo. 236, 67 S. W. 588.]

 It is next urged that the defendant's demurrers to the evidence should have been sustained because the plaintiff was injured on that part of the premises claimed to have been set apart solely for plaintiff's own use. This point has been properly saved and may be

considered by us although it was not specified by the trial court as a ground for its order granting a new trial. We are not confined to a consideration only of the specific ground on which the trial court based the order. [Smith v. Kansas City Public Service Co., 328 Mo. 979, 43 S. W. (2d) 548.]

This case falls within the well established rule that where premises are let to several tenants, each occupying different portions, but all, or two or more, enjoy and use certain portions in common, such as entrances, halls, stairways, passageways or porches, the landlord is held to have reserved such facilities for the common use of the tenants and to be in control thereof with the implied duty of maintenance and repair as to such portion of the premises and to use ordinary care to keep them in a reasonably safe condition, so that for failure to perform that duty, the landlord is liable for injuries sustained by persons rightfully using such places. [See Gray v. Pearline, 328 Mo. 1192, 43 S. W. (2d) 802.]

While it was shown that the part of the porch which fell was immediately in the rear of plaintiff's apartment we find that the reservation by the landlord of the entire porch and its common use was established by the plaintiff's evidence and made a case for the jury. Plaintiff became a tenant of the premises in 1927 under a written lease. The term of the lease had expired long before the accident but it was agreed that the plaintiff held over as though it had been renewed. One of the covenants of the lease to be observed by the tenant was that there should be ''no lounging, sitting upon, unnecessary tarrying or any obstruction in or upon the front steps, sidewalks, railings, stairways, hall, landings or other public places of the building'' nor any interference with the control of the landlord of any of the public portions of the building. It was shown that the porch was used for the temporary storage of garbage by both tenants; that the garbage was removed daily and the porch swept and cared for by the janitors furnished by the landlord; that other tenants used the porch in stringing clotheslines from its railing to the railing across the areaway and in hanging out laundry. The questions of the landlord's control over and the common use of the porch was left for the determination of the jury and their finding is conclusive. Under the evidence, if believed by the jury, no other finding than the one it reached would have been proper. A finding of a fact supported by evidence is conclusive and will not be disturbed by this court. [Friedman v. United Railways Co., 293 Mo. 235, 238 S. W. 1074.]

The Realty Company finally contends that a new trial should be granted on the additional ground that the trial court erroneously admitted in evidence testimony about an offer of compromise. It is elemental that offers of compromise are inadmissible against the party making them. [Huttig v. Brennan, 328 Mo. 471, 41 S. W. (2d) 1054.] The following occurred:

"Q. You saw Mr. Schneider and told him you would take care of him? A. Mr. Schneider was in the office one day and said what would be done about it; I said, 'When you feel well enough to come in and discuss this matter I am sure we can come to some understanding on it.'

"The Court: Well, let's not go into that."

There ensued a short colloquy between counsel, plaintiff's counsel insisting that he did not understand the witness's statement to be in the nature of an offer of compromise. Then counsel for defendants moved that the jury be discharged. The motion was denied by the court. Although the testimony was improper, counsel did not object to the question when it was asked, nor did they request that the jury be instructed to disregard witness's answer. It was the court's prompt action *sua sponte* that stopped the line of inquiry. Under the circumstances, counsel for defendants cannot complain of the court's refusal to discharge the jury.

It will be unnecessary to consider the other arguments advanced by the parties as they are of lesser moment and fall in face of the conclusions which we have reached.

The order of the circuit court setting aside the judgment and granting a new trial should be reversed and the cause remanded with directions to reinstate the judgment. It is so ordered. All concur.