**Melvin J. KNEIB and Opal Allison, Co-Executors, Respondents,**

v.

**Roger E. KNAPP and Frances K. Knapp, Appellants.**

No. WD 39142.

Missouri Court of Appeals, Western District.

March 22, 1988.

Application to Transfer Denied June 14, 1988.

Stanley I. Dale (Dale, Flynn & Barnes, of counsel), St. Joseph, for appellants.

Errol D. Taylor (Utz, Litvak & Taylor, of counsel), St. Joseph, for respondents.

Before PRITCHARD, P.J., and GAITAN and COVINGTON, JJ.

PRITCHARD, Presiding Judge.

In this discovery of assets proceeding, a jury returned a verdict for respondent Executors in the amount of $115,000 which represented amounts deposited into a joint account in the names of Charles F. Schaff and his sister, appellant, Frances K. Knapp, which, during his lifetime, were earnings of Charles F. Schaff. The trial court added $29,484 prejudgment interest to the verdict. The issue is whether there was any authority given by Charles F. Schaff that his funds from his separate income be deposited in the joint account which was between him and his sister, Frances, so as to become her property after his death.

About 1969, Frances K. Knapp, a widow, and the mother of appellant, Roger E. Knapp, moved into the home of Charles F. Schaff and lived with him until he suffered a disabling stroke on December 9, 1976. During that period of time, Charles provided all of the financial support for Frances, and by inter vivos gift, conveyed to her his home and household goods and certain corporate stock certificates in joint title with himself. Before suffering the stroke, Charles managed his own personal financial affairs and maintained the major portion of his assets and income in his sole name. He maintained three separate checking accounts at the United Missouri Bank of St. Joseph, Missouri, two of which were in his sole name through which he maintained and managed his income and investments. The third account, No. 12–700–0, was maintained in the joint names of Charles and Frances through which their household and living expenses were managed by him up to the time of the stroke. There is no question that Charles initially, on February 11, 1974, validly created the joint account (as joint tenants with right of survivorship, and not as tenants in common) between himself and Frances, both signing the signature card with the Park Bank of St. Joseph, predecessor to the United Missouri Bank of that city. It seems clear, too, that Charles made the deposits himself into the joint account up to the time of his stroke from his own income, and Charles managed the disbursements for the household living expenses of himself and his sister, Frances, up to that time.

About one month after Charles suffered his stroke, Roger E. Knapp discussed with attorney John Beihl the possibility of setting up a guardianship account for Charles, but, since it was indicated that death was imminent, it was decided not to do that because, also, the joint account between Charles and Frances permitted her to write checks on it for the care of the two of them.

The two other accounts in United Missouri Bank were closed by Frances and invested in certificates of deposit in Charles' name, but the income therefrom

was deposited into the joint account between Charles and Frances. From December 9, 1976 to January 2, 1984, the date of Charles' death, Roger E. Knapp managed all the deposits into the joint account and the expenditures, keeping, as respondents acknowledge, meticulous records thereof. $258,266.24 was deposited into the joint account, of which $94,856.40 was paid out for Charles' care, and $48,668.52 was paid out for Frances' care up to the time of Charles' death. Respondents do not question the payment of these amounts during Charles' lifetime, as he himself had done prior to his stroke, so no issue is thereby presented.

About two years prior to his stroke and after making certain inter vivos gifts of his property to Frances, he made his will, leaving substantial funds to charitable institutions, bequests to his deceased spouse's nieces and nephews, and the remainder of his estate to his brothers and sisters, including Frances, in equal shares. Respondents were appointed co-executors of the will.

Sometime after Charles' stroke, when he was being transferred from a hospital to a nursing home, Roger E. Knapp testified that he talked with him: " 'Charlie,' I said, 'the situation is somebody needs to pay the bills. I have talked to John [John Beihl, Charles' attorney] and John says that you and Mom have both got this account that both your names are on it; and they set up the income so it goes into it; and then Mom is going to write a check onto another account; and I am going to pay your bills out of that.' Q. Did he indicate to you whether he approved or disapproved of such a plan? A. He approved. I mean he couldn't talk but he approved. [Objection made and sustained.] Q. (By Mr. Dale) My question is what did he do? A. He assented. He nodded." He further testified that all moneys that came in as income were put in the joint account, and a time came when the checking account built up, more than was needed to pay bills, so he contacted John Beihl and it was agreed between them that the money be reinvested in the same way in both their names, and it was put in C.D.'s in both their names.

John Beihl testified that Knapp did contact him when the balance in the account was getting large and asked him what to do. Beihl denied that he told him to buy certificates of deposits and title them the same way the account was titled, but he told him "to put them in Mr. Schaff's name alone because that is where all the money was coming from, and knowing Mr. Schaff's estate plan like I know it. I knew that was the only way that the plan could be carried out is for those investments to be put in Mr. Schaff's name alone." It was contrary to Beihl's instructions that the C.D.'s were titled exactly the same as the joint checking account. When Charles' safety deposit box was opened, C.D.'s in total amount of $115,011.52, in the joint names of Charles and Frances, were delivered to appellants, and thereafter the C.D.'s were changed into the joint names of appellants, being so titled at the time of trial.

Although Charles validly established a joint account with survivor benefits between himself and Frances for the income from his investments up to the time of his stroke, the question here for the jury to determine was whether Roger E. Knapp, as agent, was granted authority by Charles to continue those income deposits with joint tenancy rights in Frances thereafter by his nodded assent to Roger that the joint account was to be used for income deposits, Frances writing a check on it into another account from which Roger would pay the bills. The jury was also entitled to take into consideration, contrary to Roger's testimony, that Charles' lawyer, Beihl, advised that the investments should be placed in Charles' name alone. See *Schneider v. Dubinsky Realty Co.*, 344 Mo. 654, 127 S.W.2d 691 (1939); *Empson v. Missouri Highway & Transp. Com'n*, 649 S.W.2d 517 (Mo.App.1983). The jury did not err in finding for respondents on the issue. Section 362.470, RSMo 1978, governing the creation of joint accounts, is not controlling because it was, under the facts, a matter of Charles' intention to grant Roger authority to continue to deposit income into the existing joint account, and on that issue, the verdict is supported by the evidence.

**118**

Instruction No. 7, given to the jury, is: "If you find in favor of plaintiff (sic), then you must award plaintiff (sic) such sum as you believe is the reasonable value of the assets of plaintiff (sic) being withheld from plaintiff (sic) and claimed by defendants." Appellants first say that the instruction erroneously omitted language "as a direct result of the occurrence mentioned in evidence." Respondents' verdict directing instruction submitted that Charles' sole and separate income was deposited in a joint account with Frances; that the deposits were never authorized by Charles, and as a direct result thereof, defendants received and withheld funds belonging to his estate. There were no multiple occurrences in the evidence requiring differentiation. The only occurrence was the receipt and withholding of Charles' funds without authority. Instruction No. 7 was responsive to the submission, and the jury could not have been misled, and therefore, no prejudice exists.

The judgment is affirmed.

All concur.