Byron K. BAKER, Respondent,

v.

ST. PAUL FIRE & MARINE INSURANCE COMPANY, Appellant.

No. 24863.

Kansas City Court of Appeals.

Missouri.

April 1, 1968.

James Borthwick, Kansas City, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, of counsel, for appellant.

James G. Trimble, James, McFarland & Trimble, North Kansas City, for respondent.

CROSS, Judge.

Plaintiff, Byron K. Baker, brought this action in magistrate court seeking to recover insurance benefits under a contract providing major medical expense coverage. Plaintiff had a judgment in magistrate court and defendant insurance company appealed. Trail de novo in the circuit court resulted in a jury verdict and judgment awarding plaintiff $931.75 as benefits and $89.00 interest. Defendant appeals.

■ Plaintiff tried and submitted his case on the theory that he was entitled to recover under an oral agreement with defendant's agent that the insurance coverage in question would be effective immediately on receipt of plaintiff's application therefor, accompanied by payment of premium in full, pending issuance and delivery of the policy. It is defendant's position that plaintiff failed to make a submissible case because (1) there was no evidence that defendant's agent had authority to bind the effective date by an oral contract of insurance and (2) any oral agreement as to the effective date of the coverage merged into and was extinguished by the written policy (which was issued and dated to be effective after plaintiff suffered casualty giving rise to medical expenses incurred) and that parol evidence of the oral agreement was not admissible to contradict the terms of the policy. In determining the sufficiency of evidence to support the submission we are required to consider only the evidence favorable to the plaintiff, together with the reasonable inferences in his favor to be drawn therefrom. LePage v. Metropolitan Life Ins. Co., Mo.Sup., 314 S.W.2d 735. In accordance with that rule we proceed to state facts pertinent to the appeal issues presented.

In January of 1965 plaintiff and a partner owned and were operating two restaurants in Brookfield, Missouri. During that month plaintiff "purchased" several policies of insurance from Gerry Elson who owns and operates a "general" insurance agency in Brookfield representing eight different insurance companies. The policies so procured provided coverage for public liability, workmen's compensation, burglary loss and loss from fire. While discussing those subjects of insurance, plaintiff additionally discussed with Elson the subject of major medical coverage. Elson gave him a printed prospectus to look over and "explained it to me as this is the policy I should have."

On January 28, 1965, plaintiff made application to buy "the insurance described in the prospectus", namely a $10,000.00 policy of major medical insurance, with a $500.00 deductible provision, affording coverage for plaintiff, his wife and his son. Elson "filled out" one of defendant's blank printed forms as an application for such insurance. Plaintiff signed the application and paid Elson an entire annual premium of $97.60. It was "thrown in with the workmen's compensation, liability and all those other policies." Plaintiff paid 20% in cash and "financed" the balance by a negotiable note, which Elson sold to plaintiff's bank on the same day of the transaction (January 28, 1965).

Plaintiff testified that at the time he signed the application and paid the premium he inquired of Elson when the coverage would begin and that Elson answered "Effective this minute"; and "He told me that I was covered as of that minute." The application contains the following quoted provision:

"I represent that, to the best of my knowledge and belief, the foregoing statements are full, complete and true, and agree the insurance hereby applied for, unless effective under the provisions of the binding receipt attached hereto, shall take effect on the policy date stated in the policy but only then if the policy is delivered and the full first premium is paid while the health of each person proposed for insurance remains as described herein."

Elson signed the application both as "agent" and "witness" and transmitted it to defendant. Upon inquiry from defendant concerning the health of Mrs. Baker, Elson furnished the company the information requested. Thereafter defendant issued and delivered its written policy of major medical insurance with an attached rider pertaining to Mrs. Baker, dated as of February 26, 1965. Otherwise the terms of the policy were in accordance with the oral agreement. However, prior to February 26, 1965, and on February 19, 1965, plaintiff sustained injuries in an automobile accident, was hospitalized for twelve days, and because of such accidental bodily injuries incurred medical expense totaling $1,431.75. Giving credit for the $500.00 deductible, plaintiff made claim through defendant's agent Elson for $931.75, which defendant has refused to pay. Plaintiff also requested proof of loss blanks from the company but none were furnished him. Defendant's counsel made formal admission into the record that the medical expenses claimed by plaintiff were the result of the accident on February 19, 1965.

The date the policy was delivered to plaintiff and the manner of delivery were not clearly shown. Plaintiff testified that he received the policy when he was "flat on his back" as a result of his injuries and that "it could have been delivered while I was in the hospital." Thereafter plaintiff started inquiry of Elson, the agent, as to why the effective date on the policy was not the same as the date of his application and continued for several months after the original transaction "still trying to get the effective date straightened up." On July 28th plaintiff received a communication from Elson to the effect that he (Elson) didn't understand why the policy hadn't been issued and that "it was unusual or something like that."

In direct testimony Elson denied that he told plaintiff he was covered as of January 28th, the date of the application, and disclaimed authority to bind such coverage. He did confirm that "the amount of insurance that was covered" was "$10,000 major medical * * * $500.00 deductible", and that "the premium was $97 and something". He testified that he received premiums in full on "all these policies" on January 28th, 1965, and assured plaintiff that he was "covered" on his workmen's compensation, his fire policy and his general liability. Elson admitted on cross-examination that he did not remember that he specifically told plaintiff that "this one policy (major medical) you are not covered on" because "I don't remember the total conversation." He further testified that at no time did he notify plaintiff that he lacked authority to bind health and accident policies. However, with reference to "the practice in the industry here" as to the effective date of accident and health insurance, Elson stated, "In my experience it has been that it has been issued at the date of the application."

In contending there was no evidence that Elson had authority to make an oral contract of insurance defendant admits that Elson's possession of its printed application blank and his signature thereon as "agent" show "an agency relationship of some kind", but argues that evidence is lacking to show the scope and extent of the agency. Specifically, defendant insists that plaintiff has not sustained his burden to prove that Elson had authority from defendant to bind it under an oral contract of insurance. To support its position defendant cites and relies upon cases which follow the familiar rule that an agent who is authorized merely to solicit insurance, take applications, deliver policies and collect premiums, is without power to make oral contracts of insurance; also the rule that the scope of agency can not be established by the mere declarations of the alleged agent himself. Defendant concedes that the principal is responsible for the acts of the agent when the agent acts within his *apparent* authority if the principal has clothed its agent with *the appearance* of authority.

It is the law that "In the absence of fraud on the part of insured and the agent, an insurance company is bound by

all acts, contracts, or representations of its agent, whether general or special, which are within the scope of his real or apparent authority, notwithstanding they are in violation of private instructions or limitations on his authority, of which the person dealing with him, acting in good fath, has neither actual nor constructive knowledge." 44 C.J.S. Insurance § 149, pp. 817–818. Mitchell v. Metropolitan Life Ins. Co., Mo. App., 116 S.W.2d 186. And, even if the agent's actual authority is less than his apparent authority, where the limitations thereon are unknown to the other contracting party, "apparent authority is equal to real authority." 44 C.J.S. Insurance § 228, p. 946; Shelby v. Connecticut Fire Ins. Co. of Hartford, 218 Mo.App. 84, 262 S.W. 686. A rule of particular significance to this case is stated in 44 C.J.S. Insurance § 146, p. 809, as follows: *"The forms furnished an agent for his use in transacting business with the public are cogent evidence as to what he is employed to do, and are representations to the public that he has authority to do things thereby indicated."* (Emphasis supplied.) Also see Pacific Mut. Life Ins. Co. of California v. Barton, C.C.A. 5, 50 F.2d 362, certiorari denied 284 U.S. 647, 52 S.Ct. 29, 76 L.Ed. 550. These rules were applied in recent Missouri cases which bear decisively on the question at hand.

In Voss v. American Mutual Liability Insurance Co., Mo.App., 341 S.W.2d 270, the St. Louis Court of Appeals held that an application form furnished by the insurance company to its agent containing the question, "Have you bound coverage?" (addressed in a subheading to "Solicitors") *affirmatively indicated that the agent had general authority to issue a binder* under which he was held authorized to immediately bind coverage by an oral contract of insurance. The court said:

"But an insurance company is bound by the acts of an agent acting within the scope of his apparent authority, or within the powers which it held out the agent as possessing, unless the limitations upon the agent's powers are known by or brought to the notice of the insured. Appleman, Insurance Law and Practice, Vol. 16, Sec. 8674; Distassio v. American United Life Ins. Co., 238 Mo.App. 279, 179 S.W. 2d 610; Lanowah Inv. Co. v. John Hancock Mut. Life Ins. Co., 236 Mo.App. 1062, 162 S.W.2d 307. We are of the opinion that there was ample evidence to make a submissible case as to Gallagher's apparent authority. There was no provision in the application giving notice of any limitation on Gallagher's apparent authority, such as are customary in applications taken by special agents and as were contained in the cases of Dickinson v. Bankers Life & Cas. Co., Mo.App., 283 S.W.2d 658, and Halbrook v. Atlas Life Ins. Co., Mo.App., 234 S.W.2d 628, cited by defendant. On the contrary, the application affirmatively indicated by the question 'Have you bound coverage?' that Gallagher had actual authority to issue a binder."

The court further observed that

" * * * it has been uniformly held that in the absence of any evidence that an applicant had knowledge or was put on *notice of such restrictions*, (on the agent regarding issuance of binders) the applicant is not bound by them, and is entitled to rely and act upon the agent's apparent and ostensible powers. Appleman, supra; Gaines v. Berkshire Life Ins. Co., 228 Mo. App. 319, 68 S.W.2d 905; Shelby v. Connecticut Fire Ins. Co. of Hartford, 218 Mo.App. 84, 262 S.W. 686."

Additionally the court held:

"The law is well settled that an insurance agent, acting within the scope of his authority, actual or apparent, may bind an insurance company by an oral contract of insurance. Swift v. Central Union Fire Ins. Co., 202 Mo.App. 419, 217 S.W. 1003, affirmed 279 Mo. 606, 216 S.W. 935; Corrigan v. National Motor Underwriters, 222 Mo.App. 113, 1 S.W.2d 845."

In Chailland v. M.F.A. Mutual Insurance Co., Mo.Sup., 375 S.W.2d 78, the defendant's agent made an oral contract for liability insurance with one Smiley. The applicant paid $50.00 on premium and the agent agreed that the insurance would be bound from "that date". Seven days later Smiley was involved in an accident. Defendant had issued no policy and denied there was coverage. One of defendant's contentions was that its agent had no authority to bind it by oral contract, in support of which there was evidence that the agent was authorized only to solicit applications, collect premiums and deliver policies. However, as the reviewing court noted, there was also "unquestioned evidence" that the agent had "additional powers"—referring to a letter written by defendant's attorney on its behalf to Smiley's attorney, admitting that " * * * Our agents are authorized to execute a written binder on insurance in certain instances," but stating that "in this case no such binder was executed." The opinion noted that the letter did not state that the agent did not have such authority in the particular instance but disposed of the issue by stating that no such binder was executed. Upon that state of facts the Supreme Court ruled as follows:

"We have concluded that an agent authorized to execute a written binder of insurance must be held to have the apparent authority to make an oral contract of binder unless, of course, notice of any restriction against such power is brought home to a person dealing with such agent. It is a well-settled general rule that an agent who is authorized to issue or execute policies has the authority (at least apparent) to bind his company by an oral contract of insurance. Massachusetts Bonding & Ins. Co. v. R. E. Parsons Elec. Co., 8th Cir., 61 F.2d 264, 92 A.L.R. 218. 'An insurance company is bound by a parol contract of insurance entered into by an agent authorized to make contracts of insurance, such as an agent authorized to issue policies * * *.' 44 C.J.S. Insurance § 250c, p. 1023. * * *."

"If, as we have said, an agent having authority to issue or sign a policy has the authority to bind his company by an oral contract of insurance, we think it reasonably and logically follows that an agent having authority to sign a written binder of insurance (as did Crum) also has the apparent authority to obligate his company by an oral binder. We accordingly rule, as heretofore indicated, that appellant was bound by the oral contract of insurance heretofore detailed."

It is significant to our present question that in both Voss and Chailland it was determined that documentary evidence emanating from the insurance company itself constituted substantial proof that the agent possessed apparent authority to effect immediate coverage by an oral binder. In the Voss case the probative document was the company's application blank form containing the question addressed to the agent, "Have you bound coverage?". In Chailland the writing was the company's letter admitting the authority of its agents "to execute a written binder on insurance in certain instances." Likewise, there is strikingly analogous documentary evidence in this case to show that agent Elson had actual authority to bind the company for insurance coverage, without limitation as to its effective date, by issuing a written binder. We refer to the clause contained in the printed application blank form used by defendant's agent in taking plaintiff's application, here re-quoted: "I represent that, to the best of my knowledge and belief, the foregoing statements are full, complete and true, and agree the insurance hereby applied for, *unless effective under the provisions of the binding receipt attached hereto,* shall take effect on the policy date stated in the policy but only then if the policy is delivered and the full first premium is paid while the health of each person proposed for insurance remains as described herein." (Our italics.)

■ Defendant interprets the quoted clause as meaning, "The policy would be

effective only (a) by the terms of the binding receipt, or (b) on the date stated in the policy, or (c) on delivery of the policy and payment of the premium during the continued good health of the assured." Defendant's rationalization is significant as an admission that *some agency had authority to issue and attach binding receipts to applications accepted on its behalf.* The only reasonable conclusion to be drawn from the language of the application is that the processing agent had authority to make an agreement with the applicant providing for an effective date of insurance coverage, otherwise than the policy date or date of delivery, and to evidence such agreement by a binding receipt or "binder". The language in question imposes no limitation on the agent's authority to agree with the applicant upon an effective date to be evidenced by a binding receipt, and is reasonably susceptible of interpretation that the agent had authority to bind immediate coverage, especially in view of agent Elson's testimony that, "In my experience it has been that it (accident and health insurance) has been issued at the date of the application."

■ Having determined that agent Elson was authorized to execute *a written binder of insurance,* we progress to the next stage of inquiry. Did he have delegated power to bind the company *by oral contract?* That question has clearly been answered by the Supreme Court in the Chailland case in this language (loc. cit. 82): " * * * (A)n agent authorized to execute a written binder of insurance must be held to have the apparent authority to make an oral contract of binder unless, of course, notice of any restriction against such power is brought home to a person dealing with such agent." And, as was considered to be a pertinent circumstance in the Voss case, there is no evidence in this case that any notice whatsoever was brought to plaintiff's attention indicating there was any restriction against agent Elson's authority to bind his company by an oral contract of insurance. Consequently it is a permissible conclusion that

Elson possessed "the apparent authority to make an oral contract of binder."

We next consider contentions made by defendant that the trial court erred in overruling defendant's motion for a directed verdict, asserted on the ground that any oral agreements between the parties were superseded by and merged into the written policy of insurance dated February 26, 1965, and erred in admitting parol evidence to contradict its terms. Defendant argues that plaintiff "cannot now assert a different oral agreement because the application and policy reduced the entire contract of the parties into a single written contract." Whether or not these submissions have merit depends primarily upon the general nature and legal effect of the oral contract. To that inquiry we now direct attention.

There is ample evidence to establish that Elson, *at least* under apparent authority, bound defendant by oral contract to insure plaintiff, for major medical coverage to be effective "immediately" at the time of the transaction, and that the minds of the parties had met completely on the essential details of the contract, as shown by the testimony both of plaintiff and Elson. On behalf of his company Elson exacted, and plaintiff paid, in advance, an entire annual premium and signed an application prepared by the agent. Under the evidence the jury could properly find that the rights of plaintiff to the insurance coverage were complete and presently vested when he paid the premium, signed an application formulated on the company's blank which affirmatively indicated the agent's authority to execute contracts, and the agent told him that he was "covered as of that minute." Under that coverage, so long as it was the only contract in effect, any right of recovery arising within its terms would become fixed and enforcible, irrespective of whether a subsequent policy would ever issue. As this court commented in Shelby v. Connecticut Fire Ins. Co. of Hartford, 218 Mo.App. 84, 262 S.W. 686, "The contract, however, was one of present insurance dating from the very hour of the con-

versation. While it contemplated that a written policy would be issued, yet the insurance was to be effective instanter, and there was nothing said about the oral insurance being effective only until a policy could be written. Of course, the parties contemplated that a written policy, evidencing the contract, would be drawn up, but when drawn the insurance specified by it would date from the date of the oral contract. Their agreement was not one merely that a written policy or contract of insurance would be entered into, but that the insurance was already effected." Such is the nature of the oral insurance contract before us as shown by substantial evidence.

■ As an exception to the general rule that oral negotiations or preliminary dealings are merged into a written policy, it is recognized by standard authority that there is no such merger if there is a material variance between the terms of an oral contract and the policy as executed. Couch on Insurance, Vol. 1, Section 14:5, p. 573. Also see 12 Appleman, Insurance Law and Practice, Section 7205, p. 302; 44 C.J.S. Insurance § 250, p. 1019, and Preferred Risk Fire Insurance Company v. Neet, 262 Ky. 257, 90 S.W.2d 39.

This exception was recognized and followed in the case of American Surety Company of New York v. Williford, 243 F.2d 494—a Missouri case decided under Missouri law by the United States Court of Appeals, Eighth Circuit (hereinafter referred to as "Williford"). The decision is directly in point and strongly persuasive on the question presently considered. There, as in the instant case, the insured relied upon an oral contract for insurance (comprehensive automobile liability) entered into on behalf of the insurance company by its agent. Under the oral contract it was agreed that the insurance provided would be effective April 1, 1955. On April 19, 1955, and prior to issuance of a policy,

there was a collision involving the insured vehicle. Thereafter the insurance company issued and delivered a policy dated May 12, 1955, purporting to be effective at a time *subsequent* to the collision. Upon receipt of the policy the insured expressed dissatisfaction with the policy by writing the company to the effect that there was a definite mutual agreement that the insurance would be effective on April 1, 1955; that the company had either delayed issuing the policy or had re-issued it "in the light of developments"; and, that the policy furnished did not evidence the insurance mutually agreed upon in that it did not correctly recite the effective date. Additionally, the letter contained a request "that your company promptly send us corrected policy or proper endorsements reflecting correct effective date." The company resisted liability under the oral agreement, contending (as defendant does in this case) that all prior negotiations and oral agreements were merged into the written policy and that the trial court had erred in considering parol evidence thereof. To sustain this contention the insurer relied upon Missouri cases [1] in the same general category as those relied upon by the defendant in this case. Rejecting those cases as authority, the court said:

"The facts in the cases appellant relies upon are clearly distinguishable from those in our present case. We find nothing in the cases cited which would compel the exclusion of the evidence offered by appellees to establish the oral contract of insurance. * * * In Appleman, Insurance Law and Practice, Vol. 12, § 7205, page 302, it is stated:

'Generally, oral negotiations or preliminary dealings are merged into a written application for insurance, or into the policy itself when issued which supersedes all negotiations and expresses the final intention of the parties,

---

1. Wright v. Great Eastern Casualty Co., Mo.App., 206 S.W. 428; Banks v. Clover Leaf Casualty Co., 207 Mo.App. 357, 233 S.W. 78; Commerce Trust Company v.

Watts, 360 Mo. 971, 231 S.W.2d 817; Hall v. Missouri Insurance Company, Mo. App., 208 S.W.2d 830.

unless there is a material variance between the executory agreement and the policy as executed.'

In our present case there are material variations between the oral contract and the written policy tendered. * * * We find nothing in the present record which compels us *as a matter of law* to conclude that Quick-Way accepted the written policy tendered, which stated on its face that it became operative at 5:15 P.M. on April 19, 1955, as evidencing the contract existing prior to such date and hour. The written policy did not purport to cover the period before 5:15 P.M. on April 19, 1955. *Appellant can not, by the mere act of issuing a policy subsequent to the accrual of a claim under a pre-existing oral contract and dating its coverage to a period subsequent to the time of the accrual of the claim, escape liability upon such claim if a valid oral contract of insurance protecting against such claim has been established.* * * * In Preferred Risk Fire Insurance Co. v. Neet, 262 Ky. 257, 90 S.W.2d 39, the court found the oral contract of insurance was not merged into the written policy. The court states 90 S.W.2d at page 43:

'If the agreement is to insure or is for temporary or preliminary insurance, it is merged in the policies subsequently issued if they are accepted by the insured, unless there is a material variance between the terms of the executory agreement and the policy as executed. 32 C.J. 1114; Cooley's Briefs on Ins. p. 514; Svea Fire & Life Ins. Co. v. Foxwell, supra, 234 Ky. 95, 27 S.W. 2d 675. But if there is only an attempt to issue a policy in place of an oral contract, such policy does not become valid as a contract by reason of lack of assent thereto by either party and the oral contract continues in force. It cannot be said that the oral contract is merged in a written policy which does not cover all the elements or agreements of the parol contract and does not control as to material errors

therein. Couch, § 81; 26 C.J. 52; Franklin Fire Ins. Co. v. Hewitt, 42 Ky. (3 B.Mon.) 231; Springfield Fire & Marine Ins. Co. v. Snowden, 173 Ky. 664, 191 S.W. 439, 441.'

"* * * It seems entirely clear that Quick-Way did not accept the policy tendered as the contract existing between the parties prior to the effective period of the policy. * * * Under the circumstances of this case the court committed no error in receiving and considering evidence bearing upon the formation of the oral contract of insurance." (Emphasis supplied.)

We approve the above noted principles of law followed by the court in deciding the Williford case and apply them in deciding the questions presently considered in this case. We take particular note of the court's refusal in Williford to hold as a matter of law that there was an acceptance of the policy as written. In our opinion the court's position was fully justified under the showing that the insured promptly called the insurer's attention to the policy's failure to set forth the effective date of coverage as orally agreed upon, and requested a corrected policy or endorsements to reflect the correct effective date—notwithstanding a policy had been delivered into the physical possession of the insured.

In the case before us there is obviously a material variance between the terms of the oral contract and the terms of the tendered policy as respects the effective date of coverage. The variance is of such materiality that it would extinguish plaintiff's right to recover on a claim that ripened within the term of coverage provided by the oral contract. The evidence does not reasonably tend to establish that plaintiff "accepted" or gave "assent" to the policy in the legal sense of those terms. Apparently the policy was handed to him while he was in the hospital receiving treatment for his injuries. Thereafter he expressed his dissatisfaction with the policy by inquiring of Elson as to why the effective date on the

policy was different from the date he had agreed upon, and unsuccessfully exerted efforts extending through several months "trying to get the effective date straightened up." "An acceptance to become effective must be positive and unambiguous. In order to create a contract, the acceptance of the offer must be unequivocal." 17 C.J.S. Contracts § 43, p. 680. The term "acceptance" as applied to an insurance policy "is construed to mean assent, acquiescence, or agreement to the terms and conditions of the policy * * *." National Life & Accident Ins. Co. v. Holbrook, 5 Cir., 100 F.2d 780, and "The rule (is) well settled that the acceptance to close a contract * * must be absolute, unambiguous, unequivocal (and) without condition or reservation, and in exact accordance with the offer." Lux v. Lewis, Mo.Sup., 213 S.W.2d 315. It can not be said that plaintiff received the policy with "assent, acquiescence, or agreement" as to its terms and conditions, or that there was an "absolute, unambiguous, unequivocal" acceptance of the policy "without condition or reservation". In any event, the record before us does not require or justify the conclusion, as a matter of law, that plaintiff accepted the tendered written policy as truly evidencing the beginning date of his insurance coverage, but only as evidence of the contract to govern the rights of the parties *from and after the effective date therein stated.*

█ Inasmuch as material variance between the oral contract and the policy clearly appears, and it has not been established to this court's satisfaction, as a matter of law, that plaintiff assented to or "accepted the written policy tendered" as the contract existing at the time his claim arose, it is our view, expressed in the language of the Williford opinion, that "Appellant can not, by the mere act of issuing a policy subsequent to the accrual of a claim under a preexisting oral contract and dating its coverage to a period subsequent to the time of the accrual of the claim, escape liability upon such claim if a valid oral contract of

insurance protecting against such claim has been established."

█ It is a fundamental principle of substantive law that rights already vested under an oral agreement are not extinguished or diminished, even if the oral agreement is merged into a written contract subsequent to the accrual of such rights. 17A C.J.S. Contracts § 381, "Oral Agreements and Previous Negotiations", p. 452. The rule is thus stated by the cited authority:

> "That an oral contract was merged into a written one does not affect a party's right to recover damages for a breach of the oral contract while it was in force. * * * When damages have accrued through breach of a verbal agreement, and there is no waiver or disclaimer of such breach in a subsequent writing, an action will lie on the verbal agreement notwithstanding the subsequent writing." [2]

The foregoing rule is observed by Missouri courts. In Luckey v. St. Louis & S. F. R. Co., 133 Mo.App. 589, 113 S.W. 703, this court said,

> " * * * (T)he rule is well settled that 'if damages have accrued under a verbal contract, and there is no waiver or disclaimer of such breach in a subsequent writing, an action may be maintained on the verbal agreement, notwithstanding there was a subsequent writing.' "

In Gann v. Chicago Great Western Railway Company, 72 Mo.App. 34, this court also said:

> "The defendant's further contention is that the parol contract was merged in that written. But we do not think this contention can be sustained. When the written contract was entered into the breach of the verbal contract had occurred. The subsequent receipt and transportation of the plaintiff's cattle under the written contract could not have the effect to re-

---

2. Citing Luckey v. St. Louis & S. F. R. Co., 133 Mo.App. 589, 113 S.W. 703.

lease the damages accruing on the verbal contract in the absence of a stipulation in the written contract so providing. * * * The ordinary rule no doubt is that when a shipper enters into a valid verbal contract of affreightment with the carrier and that subsequently a written contract is entered into that the latter will supersede and do away with the former, but the rule is different where there has been a breach of the verbal contract and damages have resulted therefrom."

Also see Harrison v. Missouri Pacific Railway Co., 74 Mo. 364. The case of El Paso & S. W. R. Co. v. Harris & Liebman, (Tex. Civ.App.) 110 S.W. 145 involved an oral construction contract which later merged into a written contract. The court there held:

"The position assumed by appellant that the verbal contract was merged into the written contract and that appellees could not therefore recover for the breach of the verbal contract theretofore made, is not tenable. * * * The verbal contract was in full force and effect until it was superseded by the written contract. * * * The verbal contract was in full force * * * until the written contract was executed, and appellees' claim is based upon a breach of the oral contract."

Additionally see Salisbury and others, v. Hekla Fire Ins. Co. of Madison, Wisconsin, 32 Minn. 458, 21 N.W. 552, where a fire loss occurred while an oral contract of insurance was in effect and before issuance of a written policy. Ruling that the terms of the oral contract prevailed, the court said:

"This policy did not exist and was not the contract at the time of the fire, when defendant's liability accrued. The only contract then in force was oral, and the rights of the parties must be measured by it."

In presenting the matters presently under discussion defendant relies upon Neuner v. Gove, Mo.App., 133 S.W.2d 689; Hartford Accident & Indemnity Co. v. Farmington Auction, Inc., Mo.App., 356 S.W.2d 512; Banks v. Clover Leaf Casualty Co., 207 Mo. App. 357, 233 S.W. 78 and Quirk v. Columbian National Life Ins. Co., Mo.App., 207 S.W.2d 551. Although the cited cases contain expressions of the general rule that oral negotiations are merged into the subsequent written policy, and proscriptions against the contradiction of written contracts by parol evidence of oral negotiations and agreements, they are founded on fact situations differing from that existing in the instant case and consequently are not authoritative. In Neuner v. Gove the controversy was in respect to the coverage afforded by the policy—not the effective date. The loss occurred subsequent to issuance and delivery of the policy, and the suit was on the policy itself—not upon any alleged oral agreement. The Hartford Accident & Indemnity Co. case was a suit by the insurer to recover additional premiums on liability policies issued to the insured. Banks v. Clover Leaf Casualty Co. was a suit on a policy—not on a parol contract affecting present insurance coverage. Furthermore it was there held that an alleged oral statement by the insurer's agent did not bind the company because there was no evidence to show his authority to do so. The Quirk case, likewise, was an attempted suit on an alleged life insurance policy which the evidence showed was never issued because no premium was ever paid. The case is irrelevant to the questions we have considered and decided.

We are thus lead to the conclusion that there was no merger of the oral contract of insurance into the written policy, in the sense that the policy retroactively nullified the existence of the oral contract, or voided a right of recovery accruing to plaintiff thereunder prior to the effective date the policy purported to establish, and the further conclusion that no error was committed by the trial court in admitting evidence of the oral agreement.

In one more point defendant assigns that the giving of plaintiff's Instructions numbered 3 and 4 was prejudicial error "because said instructions failed to require the jury to find that Elson had the authority to make an oral contract of insurance." Instruction No. 3 required the jury to return its verdict in favor of plaintiff if they believed that there was a valid contract of insurance in force on the date of an occurrence covered by the terms of the insurance policy and that defendant failed to pay the amount due plaintiff under those terms. Instruction No. 4 told the jury that an insurance agent acting within the scope of his authority, actual or apparent, could bind the insurer if there was agreement between the parties on the essential elements of an oral contract as defined in the instruction. Neither instruction required the jury to find that defendant's agent was acting within the scope of his authority. Defendant argues that the trial court should have submitted that issue to the jury because "Elson's agency and authority to orally contract was specifically denied in defendant's motion for directed verdict * * * and in defendant's evidence." Defendant insists that the submission was mandatory under terms of MAI 18.01 which contains prescribed forms for submitting the issue of agency "where defendant master or principal is being sued *and he has denied agency of the alleged servant or agent.*" (Our emphasis.) We do not interpret the foregoing as requiring the submission of agency to the jury merely because the existence of that relationship has been denied by pleaded allegation or by oral disclaimer when it is unaccompanied by any supporting facts to substantiate the denial. We do not believe the authors of MAI 18.01 intended that the provision in question should abrogate traditional rules which have long guided courts in determining what questions should be presented to the jury as issues of fact and what questions were for determination by the courts themselves, as matters of law.

Generally speaking, agency is a question of fact to be determined by the jury when, from the evidence adduced on the question, there may be a fair difference of opinion as to the existence of the agency. "On the other hand, agency is a question of law for the court where the material facts from which it is to be inferred are not in dispute and only one reasonable conclusion can be drawn therefrom. * * * *The question of whether a certain written instrument, which is clear and unambiguous, is sufficient to create the relation of principal and agent is one of law for the court.*" (Italics supplied.) 3 C.J.S. Agency § 330, pp. 325–326.[3] These rules are observed by Missouri courts. See Clark v. Rogers Foundry and Mfg. Co., Mo.App., 199 S.W. 576; Schneider v. Dubinsky Realty Co., 344 Mo. 654, 127 S.W.2d 691. In the last cited case, the Supreme Court stated the following:

> "It is the general rule that where the material facts from which agency is to be inferred are undisputed and only one conclusion can be reasonably drawn from them, then the question of agency is one for the court; otherwise,—it is a question of fact to be determined by the jury. 3 C.J.S. Agency § 330. In applying this rule it was held that where a series of writings were expressed in terms so plain as to require no aid from extrinsic evidence, the question whether they established the relation of principal and agent was one for the court. Clark et al. v. Rogers Foundry & Mfg. Co., Mo.App., 199 S.W. 576."

The material facts in this case from which "agency is to be inferred" are undisputed. The salient factor in the determination is the application form furnished to and used by Elson on behalf of defendant insurer. As a writing of clear meaning, that instrument is cogent evidence as to what he was employed to do, and is a representation to the public of his authorization to do the things thereby indicated.

---

3. Citing Clark v. Rogers Foundry and Mfg. Co., Mo.App., 199 S.W. 576.

It *affirmatively* imports in legal effect that Elson had apparent, if not actual, authority to bind defendant as an insurer, either by written binder or oral contract, unless there were restrictions on such authority known by or brought to the notice of the applicant. Chailland v. M. F. A. Mutual Insurance Co., supra; Voss v. American Mutual Liability Insurance Co., supra. As defendant's witness, Elson admitted that he gave no notice to plaintiff of any lack of authority to bind health and accident policies on defendant's behalf. Although Elson denied that he was authorized to bind the coverage, such denial was not premised upon any fact in evidence and is no more than a legal conclusion asserted against the legal effect of highly probative evidence to the contrary. As we have heretofore indicated, there is only one reasonable conclusion to be drawn from the record before us—that Elson had the authority to make the oral contract. Therefore, the question of agency was a matter of law to be determined by the trial court. See Terry v. Sweeney, Mo.App., 420 S.W.2d 368.

Defendant cites and relies upon Martin .v. Mercantile Trust Co., Mo., 293 S.W.2d 319 and Mead v. South Side Bank, Mo.App., 14 S.W.2d 664. Neither case supports defendant's contention. In quoting from Martin, defendant overlooks the following language: " * * * The general subject is ably discussed in the case of Schneider v. Dubinsky Realty Co., 344 Mo. 654, 127 S.W.2d 691; it was there held that where an agreement is expressed in a series of writings in terms so plain as to require no aid from extrinsic evidence, the court may declare as a matter of law whether or not an agency exists; * * *." The cited Mead case is authority to the effect that the court should determine the legal effect of certain proven facts or facts about which there is no dispute.

We rule that the trial court followed the proper course of action by deciding the issue of agency and withholding it from the jury's consideration, and that Instructions No. 3 and 4 are not erroneous as charged.

For the first time in its reply brief, defendant suggests that agents selling life insurance or health and accident insurance (unlike agents selling liability insurance) never have the authority to make oral contracts of coverage. This proposition is unaccompanied by any authority to support it. Although the question is not properly raised for consideration, we have examined defendant's suggestion and find that it lacks merit. There is no principle in the substantive law of contracts or agency that requires the courts to make an exception to the general rule of law that "an insurance agent possesses such powers as either have been expressly conferred upon him by the company, or as third persons have the right to assume that he possesses under the circumstances of the case; and that the company will be bound by all his acts, contracts, and representations which are within the scope, either of his real, or of his apparent, authority, * * *." Patterson v. Prudential Ins. Co. of America, Mo.App., 23 S.W.2d 198.

The judgment is affirmed.

All concur.