Arlene A. PHILP, Respondent,

v.

MINNESOTA MUTUAL LIFE INSUR-
ANCE COMPANY, Appellant.

No. 46200.

Missouri Court of Appeals,
Eastern District,
Division Five.

July 26, 1983.

Motion For Rehearing/Transfer to
Supreme Court Denied Sept. 15, 1983.

John W. Cowden, Kansas City, for appellant.

William O. Green, Memphis, for respondent.

REINHARD, Judge.

Defendant appeals after a jury verdict awarding plaintiff $159,600.00 plus interest. We reverse and remand.

Plaintiff filed suit after defendant-insurance company refused to pay to plaintiff life insurance benefits after the death of plaintiff's husband on a temporary insurance policy issued by defendant. Plaintiff alleged that defendant was estopped to deny coverage because of representations made by defendant's agent that defendant would notify the plaintiff when the temporary policy lapsed.[1] Defendant claimed the policy lapsed by its own terms and that its agent had no authority to bind defendant.

The evidence established that plaintiff and her husband Michael Philp purchased Michael's mother's 450 acre farm. In June, 1979, they received a loan of $159,600.00 through the Federal Land Bank of Northeast Missouri. Sam Berendzen, the Federal Land Bank loan officer serving the Philps, told the couple that they could at their option apply for credit life insurance.

Defendant has no field agents. The Federal Land Bank had a contract with defendant, whereby the latter made available credit life insurance to bank's borrowers. The contract enumerated certain services to be rendered by the Land Bank, stating however that the services to be performed by the Land Bank were not limited to those. Specific services mentioned were (a) communication of the plan to association borrowers; (b) taking mortgage insurance applications from borrowers; (c) periodic promotional mailings to current borrowers; (d) contact with bank and the insurer on questions about the plan; (e) filing claims with their insurer and general record keeping requirements. In return, the Land Bank was to receive a service fee equalling 15% of the average annualized premium during the policy year.

At the loan closing on July 25, 1979, Michael Philp applied for permanent credit life insurance for the full amount of the farm loan. Philp had secured two such insurance policies from other companies for the value of farm equipment prior to the loan closing and he obtained another, also from another company, for a combine subsequent to July 25. Berendzen gave him application forms on which Michael Philp's name had already been typed. Berendzen went through the application with the Philps. The application sought information regarding Michael's health background. Michael was asked whether he had been hospitalized during three preceding years and whether he had ever experienced certain disorders, including heart and nervous problems. Michael answered both affirmatively. Michael had been hospitalized for a stroke at the University of Iowa Hospital in Iowa City, Iowa. He also received treatment for back problems at the University

---

1. Plaintiff also had a second count based on an alternative theory of negligence. However, it is not relevant to the issues raised in this appeal.

of Missouri Medical Center in Columbia, Missouri, and was hospitalized at the Blessing Hospital in Quincy, Illinois, for an undisclosed problem. Michael did not list these hospitalizations, however, because he could not remember the names of the attending physicians. Berendzen said it would be sufficient to give the name of his current doctor. Accordingly, Michael only listed the name of Dr. John Beckert of Kahoka, Missouri. Dr. Beckert's last examination of Michael Philp on May 19, 1979 revealed that he suffered from no serious illness.

When he finished the application, Michael received another application for temporary insurance to cover the mortgage while the regular application was being considered. The temporary policy form stated that it would commence on the date of application as long as: (a) the borrower completed the application for long-term insurance; (b) the borrower answered all questions on the form; (c) all such answers were correct as to the material facts; (d) the Land Bank had disbursed all or part of the loan proceeds, and (e) the borrower had paid the first premium. The temporary insurance provided 75 days of coverage after the loan closing, but could lapse sooner upon defendant's approval or rejection of the permanent insurance application. The application also stated that the first premium payment would be refunded if the applicant failed to comply with the five conditions or if the application was rejected or not accepted within 75 days. Plaintiff paid the first premium by check before leaving the loan closing.

When plaintiff's husband completed the temporary insurance application, plaintiff asked Berendzen whether they would be notified when the short-term policy ended. She explained that they would probably lose track of time during the harvest season and would want to know as soon as possible. He said they "should be" notified.

Philp's application arrived at defendant's underwriting department August 6, 1979. Delores Schneider, the underwriter who processed the application, wrote Michael on August 8, to request more information about his medical history. His reply, received on August 29, repeated Dr. Becker's name and also indicated that he was treated for nerves in 1977. It did not mention his other ailments. The underwriter again wrote Michael to request that he undergo a physical, which was performed by a nurse, Janet Nixon. Her report listed the hospitalizations, including the stroke treatment, but defendant did not receive it until October 12.

Plaintiff received a letter dated October 8, informing her that the application for long-term insurance was still pending. The letter did not mention the status of the temporary policy. Michael Philp died October 11 in a head-on collision of two trucks. The 75 day period had passed four days earlier.

On October 18, plaintiff contacted Linda Harvey, an office assistant at the Federal Land Bank, for instructions on how to claim the insurance. Plaintiff believed the farm loan was still covered at that time. Harvey telephoned the defendant's office, reported Michael's death, and inquired into the status of the policy. Subsequently that same day, defendant called Harvey and informed her that Michael's application had been denied. This information was conveyed orally to plaintiff. On October 22, defendant sent a letter to plaintiff informing her that the 75 day period lapsed before Michael's death and that Michael's application had been rejected due to his medical history. The initial premium payment was returned with the defendant's letter on October 22. Defendant presented evidence that it had internally rejected the application for insurance on October 16, 1979 because of Michael's health.

Berendzen testified on defendant's behalf, denying that he told the Philps they would be notified when the policy ended. He stated he played no part in the decision to approve or reject an applicant for insurance and lacked authority to make statements contrary to defendant's application forms. Berendzen conceded, however, that the bank's loan officers are trained to take

applications for the defendant's insurance and that defendant's employees attend monthly meetings with Land Bank loan officers and visit their offices periodically. Berendzen also testified that all the insurance forms used by the Land Bank came from defendant, except for a disclaimer provided by the bank to borrowers who do not insure their loans.

The trial court determined as a matter of law that Berendzen was the defendant's agent and had "apparent authority, if not actual authority," to bind the defendant by his representations. The plaintiff's verdict director contained no requirement that the jury find Berendzen to have acted within the scope of his authority.

On appeal defendant's principal complaint is that the trial court erred in failing to submit to the jury the issue of the scope and authority of the agent. It contends that the issue of the scope of the agent's authority was a question of fact for the jury. We find that defendant's contention has merit.

We note initially that there is no dispute that Berendzen was an employee of the Land Bank and that if the Land Bank had the authority to bind the defendant, Berendzen also had the authority. All the evidence in the case revealed that the Land Bank and Berendzen were the agents of defendant.

■ Plaintiff tried this case on the theory that the agent had the apparent authority to bind the defendant to a modification of the terms of the temporary insurance policy. As stated in *Jeff-Cole Quarries, Inc. v. Bell,* 454 S.W.2d 5, 13 (Mo.1970), apparent authority:

> results from a manifestation by the supposed principal that another is his agent, "the manifestation being made to a third person * * *"; normally it results from a prior relation of principal and agent, but not necessarily; but it exists "only with regard to those who believe and have reason to believe that there is authority; there can be no apparent authority created by an undisclosed principal."
> ... All the tests and decided cases recog-

nize that apparent authority must arise from acts of the alleged principal, and not from any acts of the agent; an agent cannot create his own authority.

454 S.W.2d at 13.

■ The burden of proving the agent's authority rests with the plaintiff. *Dickinson v. Bankers Life & Casualty Co.,* 283 S.W.2d 658, 662 (Mo.App.1955). If there is any uncertainty arising either from a conflict in the evidence or because the undisputed facts might lead reasonable men to draw different conclusions as to the scope of authority of the agent, the question is for the jury to determine. *Wehrman v. Liberty Petrol Co.,* 382 S.W.2d 56, 62 (Mo. App.1964); *Robertson Canning Co. v. Davis,* 15 S.W.2d 882, 883–84 (Mo.App.1929); *Wade v. Boone,* 184 Mo.App. 88, 168 S.W. 360, 363 (1914). A verdict-directing instruction which assumes a defendant's agent had actual or apparent authority constitutes prejudicial error unless the element of authority is unequivocally conceded by the parties. *Cameron Mutual Insurance Company of Missouri v. Bouse,* 635 S.W.2d 488, 491 (Mo.App.1982).

■ Plaintiff presented substantial evidence that Berendzen had apparent authority to bind the defendant and his representation as to notice. Defendant had no agents in the field and relied upon the Federal Land Bank and its employees to process the applications for insurance and to answer questions of applicants. The temporary application form communicated to the applicant that if the application was completed and the five conditions previously mentioned were satisfied, then the insured would be covered by the temporary policy as of that date. This application could only be completed with the assistance and aid of a Federal Land Bank loan officer. The conditions precedent clearly contemplate the *active* assistance by such an officer and arguably conveys to such officer with additional authority not specified in the application. Nonetheless, defendant vigorously contested the scope of Berendzen's authority. Berendzen testified he did not believe

defendant ordinarily gave notice upon lapse of the temporary policy and he would not have told an applicant otherwise. Based upon this record we cannot say that the element of Berendzen's authority was unequivocally conceded by the parties. Reasonable minds could draw different conclusions as to the scope of his authority.

We are not unmindful of *Baker v. St. Paul Fire & Marine Insurance Co.*, 427 S.W.2d 281 (Mo.App.1968) relied on by the trial court. The plaintiff in *Baker* alleged his coverage under a major medical expense policy began immediately under an oral contract with defendant-insurer's agent. The defendant-insurer conceded that the application expressly stated the policy could take effect (a) by the terms of the binding receipt, (b) on the date stated in the policy, or (c) on delivery of the policy and payment of the premium during the insured's good health. This was deemed an admission that "some agency had authority to issue and attach binding receipts to applications on [the insurer's] behalf." 427 S.W.2d at 288. The only reasonable conclusion to be drawn *from the application* was that the processing agent had authority to establish an effective date other than the policy date or date of delivery. Having established that defendant had authority to make a written binder on the defendant, the court ruled this included authority to make an oral binder, unless the applicant was notified of a restriction on the agent's authority.

The salient factor in *Baker* was the application form which clearly revealed the processing agent's authority to prepare a binding receipt establishing a commencement date other than the policy date or date of delivery. The application imposed no limit on the agent's authority to agree with the applicant upon an effective date to be recorded in the binding receipt. The agent had also testified that the insurance company had typically issued the policy on the date of application. The only reasonable conclusion to be derived from this evidence was that the agent had authority to bind the defendant-insurer. 427 S.W.2d at 293.

The evidence here as to the agent's authority falls short of that in *Baker.* There is here no express reference in the application to the processing agent's authority to generally alter the terms of the application form or to extend the termination date of the temporary policy.

The trial court erred in failing to submit the scope of the authority of the agent to the jury and consequently the case must be reversed and remanded for a new trial. We have examined defendant's remaining contentions, but find none of them constituted prejudicial error.

Reversed and remanded for a new trial.

STEWART, C.J., and DOWD and CRIST, JJ., concur.