**SCHNUCKS MARKETS, INC.,**
**Plaintiff-Respondent and**
**Cross-Appellant,**

v.

**J. David CASSILLY and Joseph L.**
**Mason, Defendants-Appellants and**
**Respondents.**

**Nos. 50769, 50773 and 50806.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 6, 1987.

Motion for Rehearing and/or Transfer
Denied Feb. 3, 1987.

Application to Transfer Denied
March 17, 1987.

Blair K. Drazic, Clayton, for defendants-appellants and respondents.

William Travis, St. Louis, for plaintiff-respondent and cross-appellant.

PUDLOWSKI, Presiding Judge.

Schnuck Market and Desco Investment Company (Schnucks) brought an action against J. David Cassilly and Joseph L. Mason, d/b/a Glen Park Properties, a general partnership (Glen Park) for breach of contract. The trial court, in a jury tried case, entered judgment for Schnucks in the amount of $25,263.36. On appeal, Glen Park urges seven points which are summarized as follows: There was no authority for Cassilly to bind the partnership; there was no evidence establishing two essential elements of the contract; the damages were unreasonable and excessive; and the court admitted improper evidence as to damages. Schnucks, on cross appeal, contends the court erred in failing to award pre-judgment interest. We affirm in part and reverse in part.

The facts, when viewed in a light most favorable to the verdict are that Schnucks and Cassilly entered into an oral agreement whereby Schnucks and Glen Park would share the cost of extending a sewer line to Schnucks' property. Schnucks and Glen Park had agreed to split the deposit for the project's engineering studies 70% Glen Park and 30% Schnucks and both had paid

that money to the Duckett Creek Sewer District. Later, Schnucks and Cassilly orally agreed that construction costs would be split 50%–50%. Glen Park then breached the agreement which damaged Schnucks in that costs increased and Schnucks had to assume Glen Park's share. With Glen Park no longer involved, however, Schnucks would realize increased rebates from future users as they "tapped" into the line, thus reducing Schnucks' damages.

At trial, Glen Park denied vigorously that Cassilly and Schnucks came to a final agreement. Glen Park underscored this by constantly alluding to the absence of a written contract and the fact that they said Glen Park would never make such a contract. Glen Park also presented some evidence that despite Cassilly and Mason being general partners in developing real estate, Cassilly did not have authority to contract for Glen Park. There was no evidence that Glen Park communicated this lack of authority to Schnucks.

Glen Park's partners asserted as grounds for their motions for directed verdicts and judgments n.o.v. the issues of failure to adduce sufficient evidence that there was a contract, and that Schnucks had been damaged. They thereby failed to preserve error as to 1) the issue of Cassilly's authority to bind the partnership, 2) the issue that essential elements of the contract were not established, and 3) that the damages were unreasonable. Further, Glen Park's fifth and seventh points, the failure to include instructions on the essential terms of the contract and that the damages were excessive are not included in the motion for a new trial and they also are not preserved.[1] Thus, if we are to review, it is to be under the plain error doctrine. Rule 84.13.

Glen Park's first and fourth points relied on contend the court erred in not directing a verdict for them as the evidence conclusively established that Cassilly did not have the authority to bind the partnership and that the trial court failed to include an instruction on the issues of Cassilly's authority in the verdict director. In essence,

Glen Park rests its defense on a statement made by Cassilly in a deposition that he did not have such authority. As it was "uncontradicted," Glen Park reasons that Schnuck's failed its burden of proving authority. *Philp v. Minnesota Mutual Life Insurance Co.*, 657 S.W.2d 679, 682 (Mo. App.1983).

RSMo 358.090.1 (1978) states:

1. Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, ... for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.

Cassilly and Mason conceded that Glen Park was a partnership, thus they are both agents of the partnership and of each other. *Martin v. Yeoham*, 419 S.W.2d 937, 950 (Mo.App.1967). As the statute notes, there are exceptions to this rule. First, the act of the partner must be "for the purpose of its business" and in "carrying on in the usual way the business of the partnership." Negotiating at conventions and elsewhere an oral contract to divide the costs of sewer installation necessary for development of property certainly fits these requirements. Glen Park wishes to relitigate these issues on appeal by having us ignore the overwhelming evidence against them as to the partnership while at the same time focusing on one brief denial by Cassilly coupled with the disputed assertion that Glen Park would never make oral agreements. Glen Park also contends that negotiating the installation of sewer lines is a one-time deal and thus not in the course of partnership business. This is clearly refuted by the record. Finally, Glen Park relies on *Boonville National Bank v. Thompson*, 99 S.W.2d 93, 102 (Mo.1936) which states that the doctrine of agency does not apply to a non-trading partnership. *Black's Law Dic-*

---

**1.** Glen Park's counsel on appeal is not the same as the trial counsel.

*tionary* (5th ed.) defines "Trading partnership" as "[a] firm the nature of whose business, according to the usual modes of conducting it, imports the necessity of buying and selling." *Id.* at 1339. Thus, it appears that Glen Park qualifies as a trading partnership. More important, however, the Uniform Partnership act, which Missouri adopted thirteen years after *Thompson,* defines "partnership" as "an association of two or more persons to carry on as co-owners of a business for profit." RSMo 358.-060 (1978). This more expansive definition leads us to the conclusion that *Thompson* 's distinction between trading and non-trading partnerships is no longer relevant to the issue of partner agency authority.

■ Glen Park urges error in the failure to include an instruction in the verdict director on whether Cassilly served as Glen Park's agent. Glen Park argues that since Cassilly denied agency, there arose a disputed issue of material fact which required the court to give an instruction. *Philp,* 657 S.W.2d at 682. There are two flaws in Glen Park's analysis. First, at the instruction conference, Glen Park's counsel did no more than generally object to Schnucks' instructions. Thus, they preserved nothing for appeal. *Kline v. Bourbon Woods, Inc.,* 684 S.W.2d 938, 940 (Mo.App.1985). Secondly, Cassilly's denial of agency did not elevate this to a legally material issue for even if Cassilly did not possess authority, Glen Park would still be bound. RSMo 358.090.1 requires that if the partner in fact has no authority, "the person with whom he is dealing must have knowledge that he has no such authority." Glen Park presented no evidence that Schnucks had knowledge of Cassilly's supposedly limited status. It thus became unnecessary for the trial court to submit on this issue. The second element was undisputed and conclusive on the issue.

■ Glen Park's second point contends that the court erred by not directing a verdict for Glen Park as two essential terms of the contract, how the parties would be credited for the deposits made by both Schnucks and Glen Park for engineering work and how they would be credited

for tap in fees, was not established. Glen Park's fifth point attacks the trial court for not providing an instruction on the issue of the engineering deposits. We have reviewed the record and found that Glen Park, again, merely urges us to ignore the evidence not favorable to them. Also, Glen Park did not offer the instruction it now tries to convict the court of failing to give. Points two and five are without merit.

■ Glen Park's next points relate to the issue of damages. Number three contends that Schnucks failed to establish that the cost of completion of the sewer lines was reasonable. Number seven contends the damages were excessive. As noted above, three and seven were not preserved. Points three and seven are in fact the same point. Glen Park argues that Schnucks recovered in excess of its actual damages and that Schnucks failed to properly bid out the construction work as provided by the contract. Our review of the record discloses that after Glen Park breached, it became necessary for Schnucks to pay $65,-768.57 for construction. Had Glen Park participated as it had promised, Schnucks' cost would have been $29,361.75 (half of $58,723.49 the original cost), leaving a $36,-406.82 difference. Subtracted from that would be $7,560.00 for Glen Park's engineering deposit and $3,583.46, Glen Park's half of the tap in fee, leaving $25,263.36, the amount awarded. Glen Park's brief disputes these sums, but its mathematical convolutions ignore key facts. For instance it assumes that Schnucks should be required to pay 50% of the increased costs caused by Glen Park's breach. Secondly, it must be remembered that at trial Glen Park did not cross examine Schnucks' witness on the reasonableness of these damages or the way they were calculated. Nor did he cross examine or present evidence as to the contractual provision on "bidding out" construction. Glen Park cannot try to litigate on appeal what it failed to do below.

Finally, Glen Park attacks the trial court's admission of the evidence of damages based on the testimony of Schnucks' employer, Gordon Lyons. At trial they

stated such testimony as to damages violated "the opinion rule" and, on appeal, they also argue that Lyon's testimony lacked an adequate foundation. We disagree.

First, it must be noted that Schnucks' exhibit number 11, a summary was not admitted into evidence by the trial court. Thus, Glen Park's reliance on *Lawton v. Jewish Hospital of St. Louis,* 679 S.W.2d 370 (Mo.App.1984) and *State ex rel State Highway Commission v. Cone,* 338 S.W.2d 22 (Mo.1960) is misplaced. *Union Electric v. Mansion House Center North Redevelopment Co.,* 494 S.W.2d at 309 (Mo.1973), also cited by Glen Park, is also unhelpful as in that case, the appellant urged error by the trial court by allowing the admission of records appellant said were not accessible to him. No such claim is made here.

■ Glen Park urges us to apply the rules for the introduction of summaries to the testimony of Lyons, which Glen Park asserts, was a "naked opinion as to the total cost of construction" based on the summary. We disagree. Lyons' testimony was squarly based on his experience as an officer of Schnucks. The trial court refused to allow Lyons to testify based on the summary. But it did allow testimony, unobjected to by Glen Park, as to what Schnucks had to pay the sewer district in order to install the line. Throughout this testimony, Glen Park's repeated objections related only to supposed violation of "the opinion rule." He never objected to the testimony of Lyons as being based on an improper summary. In fact, he stated "if he (Lyons) wants to present the facts of what happened, I have no objection." Our review of the transcript discloses that this is exactly the subject of Lyons' testimony. Glen Park's point is denied.

Schnucks in its cross appeal contends that the trial court erred in failing to include the language "with 9% interest per annum thereon from August 17, 1982" in the damage instruction. The trial court based its refusal on the fact that it believed that Schnucks' damages were neither liqui-

dated sum nor under the purview of RSMo 408.020 (1984 Supp.)

■ RSMo 408.020 allows pre-judgment interest of 9% for creditors in certain situations, including "for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made," Schnucks states that the trial court misread the statute as forbidding the awarding of interest when there is an oral contract. Schnucks then cites us to *Burger v. Wood,* 446 S.W.2d 436 (Mo.App.1969) for the proposition that breach of an oral contract qualifies for pre-judgment interest. In *Burger,* a contractor sued a homeowner for payment for paving the defendant's driveway. The court said that the judgment was for an account and thus pre-judgment interest should have been allowed. This was because, according to the statute, an account is regarded as equivalent to a claim on demand. *Id.* at 443. Schnucks action falls within the purview of RSMo 408.020.

■ So, we must next decide whether this is a liquidated claim. The law in Missouri will not allow pre-judgment interest on unliquidated claims as the debtor is unaware of the amount he owes. *Ohlendorf v. Feinstein,* 670 S.W.2d 930, 935 (Mo. App.1984). In order to be liquidated so to allow interest, the claim must be fixed and determined or readily determinable, but it is sufficient if it is ascertainable by computation. *Scullin Steel Co. v. Paccar, Inc.,* 708 S.W.2d 756, 766 (Mo.App.1986). Here the record showed that it was the responsibility of the sewer district to prepare bid proposals and let a construction contract. Thus, the damages are readily ascertainable. They are the difference in the costs charged by the district in the first and second contract plus Glen Park's 50% share of the original costs minus tap in and deposit credits.

The judgment below is affirmed in part and reversed in part and remanded with instruction for the trial court to enter judg-

ment for Schnucks with pre-judgment interest running from August 19, 1982.[2]

CRANDALL and KAROHL, JJ., concur.

2. Schnucks' point relied on requests that interest run from August 17, 1982. In the absence of proof of date of demand the court will consider the demand to have been made when suit was filed. *General Aggregate Corp. v. LaBrayere,* 666 S.W.2d 901, 910 (Mo.App.1984). We find so here and believe this request for interest starting August 17, 1982 to be a minor typographical error. There is no evidence in the record that demand was made prior to suit which was filed on August 19, 1982.