**CLARK COUNTY SALES COMPANY, INC., Plaintiff-Respondent,**

v.

**Carroll HESTER, Defendant-Appellant.**

**No. 51870.**

Missouri Court of Appeals, Eastern District, Northern Division.

June 30, 1987.

**570**

Donald R. Schuering, Quincy, Ill., for defendant-appellant.

Keith W. Hicklin, Memphis, for plaintiff-respondent.

PER CURIAM.

Defendant appeals following a judgment against him in favor of plaintiff for $5,207.33 in a court-tried case. We reverse.

Defendant is a cattle buyer for meat packing companies, including McCabe Packing Co. in Illinois. He also transports cattle for various packing companies, including McCabe. Defendant's son, Terry, buys for McCabe and is an auctioneer. Terry is the principal buyer for McCabe at plaintiff's sale barn. In addition to their cattle buying activities for others, defendant and Terry purchase and resell cattle on their own behalf. Plaintiff operates a livestock auction business at its sale barn at Kahoka, Missouri.

Plaintiff sued defendant alleging that on June 11, 1984, defendant purchased livestock valued at $21,258.58 from plaintiff using bidding numbers 801, 802, 803, 804,

and 805; that on June 15, 1984, defendant delivered to plaintiff a $4,558.09 check; and that on June 18, 1984, he delivered an $11,-493.16 check for a total payment of $16,-051.25. Plaintiff prayed for judgment for the difference, $5,207.33.

In his answer, defendant admitted the $4,558.09 payment but denied the other allegations. As an affirmative defense, he alleged he was entitled to a set-off of $1,772.10 because, in March 1984, he had delivered to plaintiff's sale barn five steers that were never sold or redelivered to him. He also alleged as an affirmative defense that his son Terry bought 38 cows for McCabe (the McCabe cows) on June 11, 1984, but not all of those cows were delivered.[1] He claimed that if the trial court found him liable for the McCabe cows, he was entitled to a set-off of $3,435.23, the value of the missing cows. Defendant also filed a counterclaim for $1,772.10, alleging a breach of a bailment contract concerning the five steers missing since March 1984.

After hearing the evidence, the trial court found for plaintiff on all issues and entered judgment against defendant in the amount of $5,207.33.

 On appeal, defendant contends the trial court erred in finding against him on the bailment issue and in finding that he was liable to plaintiff for the McCabe cows. Our standard of review in a court-tried case is set forth in *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). It provides that the judgment of the trial court will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* at 32.

Defendant admits that he personally purchased 19 head of feeder cattle on June 11, 1984, at the plaintiff's auction for a total price of $6,330.19 and then deducted $1,772.10 from his payment to plaintiff as a set-off for the loss of the five steers in March.[2] The sole issue concerning the

---

1. Defendant's evidence was that Terry used bidding numbers 801, 802, and 803 to purchase the McCabe cows.

2. Defendant testified he used bidding numbers 804 and 805 to purchase the feeder cattle.

amount owed for the feeder cattle was resolved by the trial court's determination in favor of plaintiff on the issue of the March bailment of the steers. We believe there was sufficient evidence to create a factual issue on bailment to be determined by the trial court as factfinder. The court's determination that defendant owed plaintiff $1,772.10 is supported by substantial evidence.

We do, however, conclude that the trial court erred in finding defendant liable for the McCabe cows. We reach this conclusion after considering plaintiff's petition, its evidence, its theory of the case, the trial court's findings on the disputed evidence, and our own examination of the admitted evidence.

■ When a cause is tried to the bench, the trial judge resolves conflicts in the evidence and determines the credibility of the witnesses and may accept their testimony entirely or in part. *Knowlton v. Knowlton,* 673 S.W.2d 502, 505 (Mo.App.1984). The appellate court makes an independent evaluation of the conclusions of law the trial court draws from its factual findings and the admitted facts. *See Phillips v. Authorized Investors Group, Inc.,* 625 S.W.2d 917, 919 (Mo.App.1981).

Plaintiff's pleadings and evidence were premised on the theory that defendant personally bid on the McCabe cows and, therefore, was personally liable for them. The trial court rejected plaintiff's theory, finding that defendant's son Terry did the bidding and held defendant liable on an unpleaded agency theory that Terry had "apparent authority to purchase the cattle on June 11th, 1984 for defendant."

■ Apparent authority results from a manifestation to a third person by the supposed principal that another is his agent. *Philp v. Minnesota Mutual Life Insurance Co.,* 657 S.W.2d 679, 682 (Mo.App. 1983), citing *Jeff-Cole Quarries, Inc. v. Bell,* 454 S.W.2d 5, 13 (Mo.1970). Apparent authority arises from the acts of the alleged principal and not from any acts of the agent; an agent cannot create his own authority. *Philp,* 657 S.W.2d at 682. Normally, but not necessarily, apparent author-

ity arises from a prior principal-agent relationship. *Id.* The third party must show reliance on the apparent authority. *Rusk Farms, Inc. v. Ralston Purina Co.,* 689 S.W.2d 671, 678 (Mo.App.1985). Thus, to support the proposition that the defendant purchased the McCabe cows, there must be evidence from which the trial court could have found that plaintiff relied on the apparent authority of Terry to buy the cows for defendant. We believe the court erred as a matter of law on this issue. Although there was evidence of prior dealings from which plaintiff could have justifiably concluded that Terry was buying the McCabe cows for defendant, plaintiff's evidence negates reliance in this instance. Plaintiff's principal witness and part-owner steadfastly maintained at trial that defendant personally did the bidding; thus there was no evidence that plaintiff relied on the actions of defendant to establish the agency that the trial court found regarding the McCabe cows.

We believe the evidence supports a finding that, in light of prior transactions at plaintiff's barn, Terry was purchasing either for himself or for someone other than defendant. Plaintiff's evidence establishes that regular buyers do not disclose the identity of their principals prior to, or at the time of, the bidding. When a buyer is finished buying at a sale, he then reveals to plaintiff's bookkeeping department the identity of the person or company to be billed for livestock purchased on the various bidding numbers. Plaintiff then makes an "accounts receivable listing" to indicate who purchased which livestock, gives the "tickets" describing the livestock purchased to the high bidder, and awaits the purchaser's check which usually arrives in three or four days.

At the time he was bidding, Terry was an agent for an undisclosed principal. When he completed his bidding, he disclosed to plaintiff that his principal in the purchase of the cows was McCabe. Plaintiff then billed the purchases to McCabe, and McCabe ratified the agency by sending its

check.[3] A third party (plaintiff here) can elect to sue the agent (Terry) or, upon discovering its identity, the undisclosed principal (McCabe). *See Burckhardt v. General American Life Insurance Co.*, 534 S.W.2d 57, 71 (Mo.App.1975). The defendant was neither the agent nor the undisclosed principal here.

The judgment of the trial court is reversed and, pursuant to Rule 84.14, judgment is entered against defendant in the amount of $1,772.10. Appellate costs are assessed against defendant.

Judgment reversed.

---

3. Terry's agency on behalf of McCabe is not an issue here, but the entire sequence of events, i.e., posting the purchase to the McCabe accounts receivable listing and accepting and de- positing the McCabe check, are evidence that plaintiff viewed the transaction in question as one of Terry buying on behalf of McCabe.